## A06A1053. TARVER v. THE STATE.
(633 SE2d 415)

JOHNSON, Presiding Judge.
A jury found Clifford Tarver guilty of rape, aggravated sodomy, false imprisonment, and two counts of aggravated assault. Tarver

---

[17] See generally *Whitaker v. State*, 275 Ga. 521, 522 (1) (570 SE2d 317) (2002).

appeals, alleging the evidence was insufficient to support the jury's verdict, the state improperly presented "bad character" evidence, and he was denied effective assistance of trial counsel. These enumerations of error lack merit, and we affirm Tarver's convictions.

1. On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence; moreover, this Court determines evidence sufficiency and does not weigh the evidence or determine witness credibility.[1] "Resolving evidentiary conflicts and inconsistencies, and assessing witness credibility, are the province of the factfinder, not this Court."[2] As long as there is some evidence, even though contradicted, to support each necessary element of the state's case, this Court will uphold the jury's verdict.[3]

Viewed in that light, the evidence showed that the victim and Tarver had an on and off relationship for several years; she would sometimes spend the night at his house and have sexual relations with him. On Friday, July 26, 2002, Tarver and the victim bought a 12-pack of beer and went to a park. The victim had not seen Tarver for about two weeks prior to this time. Tarver started acting "weird" and left. He later returned, forced the victim into his car and took her to his house. There, they drank some more beer and fell asleep.

The next morning, the two continued drinking. Tarver asked the victim for sex, and she refused. He persisted in his request for an hour or two, and the victim continued to refuse. Tarver then became violent and threw the victim on the bed. He hit her "real hard" in the back and on the arms with hedge clippers. She begged him to stop. Tarver ordered the victim to remove her clothes, and, out of fear, she did. The victim was finally able to run to the bathroom, lock the door and climb out of the bathroom window. However, Tarver had already exited the house and continued his attack on the victim when she reached the ground. He dragged the victim by her hair back into the house. Tarver grabbed her, twisted her arm, and said, "I'm trying — bitch, I'm going to kill you." He hit her in the arm and leg with the hedge clippers and punched her once on the lips and once on the forehead. Tarver threw the victim on the bed and raped her and made her perform oral sex on him. He then told her to go to sleep and threatened to kill her if she told anyone about the incident.

The following day, the victim called the police, and an officer responded to the scene. He saw that the victim had an injured arm and bruises, and sent her to the hospital. Tarver told the officer that

---

[1] *Flowers v. State*, 269 Ga. App. 443, 445 (2) (604 SE2d 285) (2004).

[2] (Citation omitted.) *Odett v. State*, 273 Ga. 353, 353-354 (1) (541 SE2d 29) (2001).

[3] *Parnell v. State*, 260 Ga. App. 213, 218 (6) (581 SE2d 263) (2003).

the victim had been downtown and someone had beaten her up. He told the officer that the victim would blame him for the beating. Following a more extensive interview with the victim at the hospital, police returned to Tarver's house to arrest him. As they approached, Tarver shouted, "I didn't rape that girl." He was arrested, advised of his rights, and waived his rights.

Tarver invited the police into his house, where they found a pair of hedge clippers and saw pry marks on the bathroom door. Tarver again told officers that the victim had a fight downtown. He added that she brought the hedge clippers with her after the fight. Tarver admitted that he forced open the bathroom door, but only because the door was hard to open and the victim had gotten locked inside. According to Tarver, the two had consensual sex.

The state also presented similar transaction evidence in the form of testimony of another victim. This victim testified that on February 28, 1996, Tarver chased her, stabbed her in the back several times with a knife, dragged her to a ditch, and forced her to perform oral sodomy on him.

Tarver contends the evidence was circumstantial and did not disprove his "reasonable explanation for the events and his innocence." We find no error. First of all, this case was not a circumstantial evidence case. The state presented direct evidence in the form of the victim's testimony. Therefore, OCGA § 24-4-6 does not apply, and the state was not required to exclude every reasonable hypothesis save that of guilt, as Tarver argues.

In this case, the evidence, particularly the victim's testimony and the visibility of her injuries, was sufficient for a rational trier of fact to find Tarver guilty beyond a reasonable doubt of the crimes with which he was charged.[4] Tarver, in effect, seeks a reweighing of the evidence, and this we cannot do.[5]

2. Tarver contends the trial court erred in admitting "bad character" evidence at two separate points in the trial. First, Tarver argues that the trial court erred in allowing improper bad character evidence regarding crack cocaine during the victim's testimony. The record shows that the first alleged error occurred when Tarver's counsel was questioning the victim about various ways that Tarver would help her:

> Q. And you were addicted to crack cocaine at this point in your life?
> A. Yes.

---

[4] See *Flowers*, supra at 445-446.

[5] See *Easley v. State*, 266 Ga. App. 902, 905 (3) (598 SE2d 554) (2004).

Q. In fact, Mr. Tarver pawned his car and gave you some money, didn't he?
A. No.
Q. You don't remember that?
A. Huh-uh. No. . . . He didn't give me no money. He used to buy me — he used to buy crack for me.

Tarver's counsel moved for a mistrial, which the trial court denied. We find no error. A motion for mistrial is within the trial court's discretion, and the court did not abuse its discretion in denying Tarver's motion for mistrial.[6] Moreover, the trial court was not required to give a limiting instruction in the absence of a request, and the record clearly shows that Tarver's counsel did not request such a limiting instruction.[7]

The second alleged instance of inadmissible bad character evidence involves another dialogue between Tarver's counsel and the victim. Tarver's counsel asked the victim, "All [Tarver] has ever tried to do is help you out; isn't that true?" She responded, "No." Subsequently, on redirect examination, the state elicited the following testimony:

Q. The defense thinks that all this man has ever done for you is help you; is that true?
A. No.
Q. Has he ever hurt you?
A. He have — we went to court back in October of last — of two years ago for disorderly conduct and he have [sic] hit me in my head with — he had stuck me in my head with a knife.

Again, Tarver's counsel objected and requested a mistrial, which the trial court denied. However, the trial court told the state to go no further into the disorderly conduct incident, and nothing more of it was heard. The trial court did not abuse its discretion in denying Tarver's motion for mistrial.[8] Moreover, absent a request for a limiting instruction, the trial court was not obligated to give one on its own accord.[9] This enumeration of error lacks merit.

3. Tarver contends he received ineffective assistance of trial counsel due to his counsel's failure to request limiting instructions regarding the incidents addressed in Division 2. To prevail on a claim of ineffective assistance of counsel, a defendant must show two

---

[6] See *Agee v. State*, 279 Ga. 774, 777 (4) (621 SE2d 434) (2005).
[7] See *Smith v. State*, 270 Ga. 68, 70 (3) (508 SE2d 145) (1998).
[8] See *Agee*, supra.
[9] See *Smith*, supra.

things: (1) that counsel's performance was deficient, and (2) that the deficient performance so prejudiced the defense that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different.[10] The trial judge, who oversaw the trial and heard the evidence presented at the hearing on the motion for new trial, makes the findings on whether the performance was deficient and whether it prejudiced the defendant, findings that this Court does not disturb unless clearly erroneous.[11] In evaluating an attorney's performance, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.[12] We will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial court could not reliably have produced a just result.[13]

Here, Tarver's appellate counsel discussed several times in the hearing on the motion for new trial the likelihood that he would call trial counsel to testify at the hearing. However, the record shows that trial counsel did not testify, nor did he submit an affidavit to the trial court. It is well established that counsel's failure to object or request a limiting instruction can be strategic when done not to highlight the evidence in question.[14] Thus, trial counsel's action in failing to request limiting instructions in these two instances could have been strategic, and are thus presumed strategic, rather than deficient, in the absence of testimony to the contrary.[15] No such testimony was presented. Tarver has made no affirmative showing that the purported deficiencies in his trial counsel's representation were indicative of ineffectiveness and were not examples of a conscious and deliberate trial strategy.[16] The trial court's conclusions that Tarver received effective assistance of trial counsel are not clearly erroneous.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED JUNE 22, 2006.

*Mark A. Casto*, for appellant.

---

[10] *Prince v. State*, 277 Ga. 230, 233 (3) (587 SE2d 637) (2003).

[11] *Kilpatrick v. State*, 252 Ga. App. 900, 902 (1) (557 SE2d 460) (2001).

[12] *Sampson v. State*, 279 Ga. 8, 10 (6) (608 SE2d 621) (2005).

[13] *Glass v. State*, 255 Ga. App. 390, 401 (10) (565 SE2d 500) (2002).

[14] See *Fargason v. State*, 266 Ga. 463, 464-465 (4) (467 SE2d 551) (1996).

[15] See *Jackson v. State*, 271 Ga. App. 317, 320 (1) (b) (609 SE2d 643) (2005).

[16] *Hayes v. State*, 279 Ga. 642, 645 (3) (619 SE2d 628) (2005).

*J. Gray Conger, District Attorney, David R. Helmick, Assistant District Attorney*, for appellee.