## A10A2120. BOATRIGHT v. THE STATE.
(707 SE2d 158)

MILLER, Presiding Judge.

Following a jury trial, Joe Donald Boatright was convicted of child molestation (OCGA § 16-6-4 (a) (1)), aggravated sexual battery (OCGA § 16-6-22.2 (b)), and two counts of tattooing the body of a minor (OCGA § 16-5-71 (a)). Boatright filed a motion for new trial, which the trial court denied. On appeal, Boatright contends that (i) his trial counsel rendered ineffective assistance in several respects and (ii) the trial court erred in denying his motion to sever the offenses. We discern no error and affirm.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the trial evidence showed that Boatright shared a residence with his girlfriend, who was the aunt of the female victims, B. D. and C. D. On June 5, 2003, C. D. and her female friend, P. K., who were both 15 years old, visited the residence. During that evening, C. D. and P. K. asked Boatright to give them both tattoos. Although Boatright initially denied the girls' requests, he later agreed to perform the tattooing. C. D. and P. K. pulled down their pants and underwear to expose the intimate areas on their lower abdomens, where Boatright placed permanent "Playboy" bunny tattoos on both of the girls.

Later that night, C. D. and P. K. fell asleep, sharing a bed with the aunt. While P. K. was sleeping, Boatright entered the bed next to her. P. K. awakened and discovered that Boatright was nude and was rubbing her leg.

Thereafter, on or about August 1, 2003, 14-year-old B. D., and her male cousin, A. F., visited Boatright's residence. Later that evening, B. D. fell asleep on the living room couch, and A. F. feel asleep on the living room floor. While B. D. was sleeping, Boatright got onto the couch with her. B. D. was awakened when she felt Boatright's hand in her pants and his fingers penetrating her vagina. At the time of the incident, A. F. also was awakened and observed Boatright touching B. D. Boatright then got up and left the room.

Months later, on or about October 6, 2003, B. D. disclosed the molestation incident to her father. B. D. stated that Boatright had threatened to kill her aunt if she told anyone about the molestation, and that she had delayed making the disclosure because she was afraid, upset, and embarrassed.

Upon hearing of the molestation incident, B. D.'s father reported the matter to local police authorities. During the ensuing investigation, a detective interviewed B. D., C. D., and P. K. The detective observed and photographed the permanent tattoos that Boatright had placed on C. D. and P. K. The detective also obtained statements from B. D. and P. K. regarding the molestation incidents.

The detective went to Boatright's residence to arrest him, but the residence was abandoned. In efforts to locate Boatright, the detective requested assistance from the Federal Bureau of Investigation ("FBI"). The detective and special agents subsequently learned that Boatright had fled to Florida and was using an alias to avoid prosecution. Boatright later fled to Louisiana, where he resided until the date of his arrest in 2007.

Following his arrest, Boatright was charged and convicted of the tattooing and sex offenses.[1]

1. On appeal, Boatright contends that his counsel rendered ineffective assistance at trial.

> To prevail on a claim of ineffective assistance, appellant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. Appellant must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct. In reviewing a lower court's determination of a claim of ineffective assistance of counsel, an appellate court gives deference to the lower court's factual findings, which are upheld unless clearly erroneous; the lower court's legal conclusions are reviewed de novo.

(Citations and punctuation omitted.) *Farris v. State*, 293 Ga. App. 674, 675-676 (667 SE2d 676) (2008). See also *Sweet v. State*, 278 Ga. 320, 321-322 (602 SE2d 603) (2004). Bearing these principles in mind, we address Boatright's claims of ineffective assistance of counsel.

(a) Boatright first argues that his trial counsel was ineffective for failing to move for a mistrial when a State's witness interjected bad character evidence. We discern no reversible error.

During the State's case-in-chief, the prosecutor examined a FBI special agent regarding his efforts to locate Boatright following his

---

[1] Although Boatright does not challenge the sufficiency of the evidence supporting his convictions, we note that the jury was authorized to find Boatright guilty of the offenses based upon the evidence set forth above. See OCGA §§ 16-5-71 (a); 16-6-4 (a) (1); 16-6-22.2 (b). See also *Kolar v. State*, 292 Ga. App. 623, 623-625 (1) (665 SE2d 719) (2008); *Cheek v. State*, 265 Ga. App. 15, 15-16 (1) (593 SE2d 55) (2003). It is true that P. K. recanted her prior statements to the detective regarding the molestation incident, and the trial testimony conflicted as to whether A. F. had observed B. D.'s molestation incident. Nevertheless, "[i]t is for the jury[,] and not this Court[,] to resolve conflicts and to assess witness credibility." (Punctuation and footnote omitted.) *Cheek*, supra, 265 Ga. App. at 16 (1). The recantation and conflicting evidence did not render the evidence against Boatright insufficient as to the sex offenses. See id.

flight to avoid prosecution. The special agent testified that his efforts included contacting a Georgia debt collection service, contacting the attorney general's office in Texas, and conducting a computerized database check. When the special agent further expounded that he received information reflecting that the debt collection agency was trying to find Boatright and that Boatright had a suspended driver's license, trial counsel immediately objected. The trial court sustained the objections, excused the jury from the courtroom, and conducted a bench conference to address the improper testimony. During the bench conference, the trial court advised the special agent that the content of the information he obtained during his search was inadmissible. The trial court then ordered a brief recess to allow the prosecutor to further instruct the special agent about restricting his responses to the examination questions. When the proceedings resumed, the special agent provided appropriate, nonobjectionable responses to the questions posed. There was no further mention of the improper bad character evidence.

After the trial court sustained his objections to the improper testimony, trial counsel did not move for a mistrial. Under the circumstances presented, however, a motion for a mistrial was not required. As an initial matter, the record reflects that the special agent's improper remarks were fleeting, unsolicited, and nonresponsive to the prosecutor's examination questions. "[A] nonresponsive answer that impacts negatively on a defendant's character does not improperly place his character in issue." (Citation and punctuation omitted.) *Walker v. State*, 282 Ga. 703, 705 (2) (653 SE2d 468) (2007).

Moreover, at the hearing on Boatright's motion for new trial, trial counsel explained that he did not move for a mistrial as a matter of trial strategy because he did not believe that a mistrial was warranted and he did not want to draw further attention to the objectionable facts. Trial counsel's strategy in this regard was not unreasonable. See *Sweet*, supra, 278 Ga. at 324 (5); *Rivers v. State*, 271 Ga. 115, 118 (2) (b) (516 SE2d 525) (1999).

Nor has Boatright shown that he was otherwise entitled to a mistrial based upon the circumstances. "A motion for mistrial is within the trial court's discretion[.]" (Footnote omitted.) *Tarver v. State*, 280 Ga. App. 89, 92 (2) (633 SE2d 415) (2006). A mistrial is not required where, as here, the trial court takes prompt action that effectively remedies the inadvertent introduction of "bad character" evidence at trial. See id. at 91-92 (2); *Mims v. State*, 278 Ga. App. 282, 283 (1) (628 SE2d 596) (2006). The trial court sustained the objections to the improper testimony and instructed the prosecutor and special agent to restrict the examination and responses. The special agent and prosecutor complied with the trial court's instructions, and there was no further mention of the bad character

evidence. In light of the prompt action taken by the trial court that effectively resolved the issue, a mistrial was not required. See *Tarver*, supra, 280 Ga. App. at 92 (2); *Mims*, supra, 278 Ga. App. at 283 (1).[2] Since Boatright has not shown that he was entitled to a mistrial under the circumstances presented, trial counsel's failure to pursue a meritless motion does not constitute ineffective assistance of counsel. See *Warren v. State*, 289 Ga. App. 481, 489 (7) (e) (657 SE2d 533) (2008); *Fennell v. State*, 271 Ga. App. 797, 802 (6) (d) (611 SE2d 96) (2005).

(b) Boatright further argues that trial counsel was ineffective when he introduced bad character evidence during his cross-examination of the detective. During the detective's cross-examination, trial counsel elicited testimony that an informant had claimed that Boatright was wanted for murder in Texas. In further response, the detective conceded that contrary to the informant's claim, he did not find any warrants for Boatright in Texas. The detective also testified that although Boatright had been arrested based upon the informant's claim, he was later released from custody after no warrants were found and the claim could not be substantiated.

Generally, strategic decisions regarding which defense theories to pursue and the manner of conducting cross-examination are within the exclusive province of the attorney after consultation with the client and do not amount to ineffective assistance. See *Lupoe v. State*, 284 Ga. 576, 579 (3) (e) (669 SE2d 133) (2008). Although the above testimony elicited during trial counsel's cross-examination placed Boatright's character in issue, trial counsel explained that he had made a strategic decision to pursue the line of questioning. Trial counsel stated that he introduced the evidence for the purpose of showing that the police had a vendetta against Boatright based upon an unsupported "trumped up" charge. Trial counsel further stated that the information supporting Boatright's defense theory of a vendetta had been provided by Boatright himself, and that he believed that the benefit of the evidence outweighed the risk of its introduction.

Based upon the foregoing, the trial court was authorized to find

---

[2] Compare *Chapman v. State*, 202 Ga. App. 267, 268-269 (2) (414 SE2d 240) (1991) (concluding that the trial court erred in denying the defendant's motion for a mistrial since no remedial action was taken after the prosecutor improperly placed the defendant's character in evidence by stating that he had a suspended driver's license). Here, unlike in *Chapman*, the trial court took action to address the special agent's fleeting, nonresponsive statements, and trial counsel made a valid strategic decision not to request a mistrial or any further action that would draw attention to the objectionable facts. See *Sweet*, supra, 278 Ga. at 324 (5); *Rivers*, supra, 271 Ga. at 118 (2) (b).

that trial counsel's cross-examination of the detective was part of a valid trial strategy.[3] See *Farris*, supra, 293 Ga. App. at 678 (3).

> That this strategy was ultimately unsuccessful in securing a defense verdict on all charges does not show that trial counsel's actions were objectively unreasonable. The standard regarding ineffective assistance of counsel is not error-less counsel and not counsel judged ineffective by hindsight[.]

(Citation and punctuation omitted.) Id. at 678-679 (3).

(c) Boatright next contends that trial counsel erroneously failed to impeach a State's witness with evidence of his prior misdemeanor convictions for theft by receiving stolen property and theft by taking. We discern no error.

Under OCGA § 24-9-84.1 (a) (3), evidence that a witness has been convicted of a misdemeanor crime is admissible for purposes of impeachment if the crime involved dishonesty or making a false statement. Crimes involving dishonesty or false statement that fall within the purview of the statute are limited to

> crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.

(Citation and punctuation omitted.) *Clements v. State*, 299 Ga. App. 561, 562 (1) (683 SE2d 127) (2009); *Adams v. State*, 284 Ga. App. 534, 537-538 (3) (644 SE2d 426) (2007) (physical precedent only). Generally, theft is not a crime that necessarily involves dishonesty or making a false statement of the sort contemplated by this statutory subsection. See *McClain v. State*, 301 Ga. App. 844, 848 (2) (689

---

[3] Although Boatright argues that trial counsel should have presented additional evidence to show that the murder accusation itself was false, his argument is without merit. Contrary to Boatright's claim, trial counsel was not required to delve into further details, which would have placed undue emphasis on the murder accusation and confuse the issues and charges pertinent to the instant case. Significantly, trial counsel's cross-examination showed that the informant's claim was unsubstantiated. Accordingly, trial counsel's cross-examination strategy was not unreasonable in its effort to balance the need to present evidence supporting the defense theory and the need to avoid prejudice to the defense. See *Farris*, 293 Ga. App. at 678 (3). Compare *Emilio v. State*, 263 Ga. App. 604, 605-606 (1) (588 SE2d 797) (2003) (concluding that trial counsel's performance was deficient when he introduced evidence that the defendant had been asked to commit a crime and was wanted in five states, since trial counsel failed to inform the jury that the damaging references in the evidence were false or unsubstantiated).

SE2d 126) (2010); *Clements*, supra, 299 Ga. App. at 562-563 (1); *Jacobs v. State*, 299 Ga. App. 368, 375 (2) (e) (683 SE2d 64) (2009); *Adams*, supra, 284 Ga. App. at 540 (3). Accordingly, the party seeking to use a misdemeanor theft conviction as impeachment evidence must show that the conviction involved fraud or deceit. Id.

At the motion for new trial hearing, Boatright presented evidence reflecting that the misdemeanor theft convictions were based upon incidents in which the witness had received a stolen license plate for use on his vehicle and had stolen cell phones from a school facility. Significantly, that evidence did not show that the misdemeanor theft convictions involved fraud or deceit within the meaning of OCGA § 24-9-84.1 (a) (3). Consequently, Boatright failed to show that the theft convictions would have been admitted for impeachment purposes at trial. See *McClain*, supra, 301 Ga. App. at 848-849 (2) (concluding that a prior theft by taking conviction was inadmissible as impeachment evidence); *Adams*, supra, 284 Ga. App. at 540 (3) (ruling that a prior theft by receiving stolen property conviction was inadmissible for impeachment purposes). It thus follows that trial counsel was not ineffective for failing to present the misdemeanor theft convictions at trial.[4] *McClain*, supra, 301 Ga. App. at 848-849 (2).

(d) Boatright further contends that trial counsel erred by failing to object when the trial court denied the jury's request for a transcript of the testimony given by P. K., one of the victims. Again, no error has been shown.

The record reflects that during deliberations, the jury sent a note asking for "a copy of [P. K.'s] testimony[.]" The trial court denied the jury's request and instructed them to make their decision based upon the evidence that they had previously heard during trial.

> The rule in this state is that the trial judge, in his discretion, may permit the jury[,] at their request[,] to rehear in the defendant's presence the requested testimony

---

[4] In support of his claim, Boatright cites to *State v. Lamb*, 287 Ga. App. 389, 391-392 (1), (2) (651 SE2d 504) (2007), overruled on other grounds by *O'Neal v. State*, 285 Ga. 361 (677 SE2d 90) (2009). In *Lamb*, we held that trial counsel provided ineffective assistance by failing to impeach a witness with her prior convictions for theft and forgery, and that there was a reasonable probability that the failure prejudiced the defense. Id. The *Lamb* decision did not address whether the prior theft conviction was a felony or a misdemeanor involving fraud or deceit. Id. Nevertheless, since a party cannot be prejudiced by the failure to present inadmissible evidence, implicit in the *Lamb* holding is that the witness's prior theft conviction satisfied the requirements of either OCGA § 24-9-84.1 (a) (1) or (3) and would have been admissible as impeachment evidence at trial. Here, Boatright failed to show that the witness's prior misdemeanor theft convictions would have been admissible as impeachment evidence, and therefore, trial counsel was not ineffective in failing to introduce the convictions at trial. See *McClain*, supra, 301 Ga. App. at 848-849 (2); *Adams*, supra, 284 Ga. App. at 540 (3).

after beginning deliberation. Likewise, the court may also, in its discretion, refuse such a request. Of course, jury requests should not be arbitrarily or capriciously denied.

(Citations and punctuation omitted.) *Rutledge v. State*, 237 Ga. App. 390, 393 (5) (515 SE2d 1) (1999). See also *Davis v. State*, 266 Ga. 801, 802-803 (4) (471 SE2d 191) (1996); *Lee v. State*, 241 Ga. App. 182, 185 (4) (525 SE2d 426) (1999).

In this case, the jury did not specify any portion of P. K.'s testimony that they wanted to rehear, but rather asked for a copy of all of her testimony. The record does not reflect that there was a serious disagreement as to the substance of P. K.'s testimony or that the testimony had been misstated during the course of trial. Under these circumstances, the trial court was authorized to deny the jury's request. See *Lee*, supra, 241 Ga. App. at 185 (4); *Rutledge*, supra, 237 Ga. App. at 393 (5); *Davis*, supra, 266 Ga. at 802-803 (1). Compare *Scroggins v. State*, 237 Ga. App. 122, 125-126 (5) (514 SE2d 252) (1999) (concluding that the trial court abused its discretion in denying the jury's request to rehear testimony when there had been a serious disagreement regarding whether defense counsel had misstated the evidence in his closing argument and granting the jury's request would have settled that dispute). Accordingly, the trial court was authorized to deny the jury's request, and trial counsel was not ineffective for failing to make a meritless objection to the trial court's decision. See *Rutledge*, supra, 237 Ga. App. at 393 (5); *Jackson v. State*, 288 Ga. App. 432, 434 (1) (b) (654 SE2d 232) (2007) ("The failure to make objections which would not have succeeded cannot support a claim of ineffective assistance of counsel.") (citation omitted).

(e) Boatright also claims that his trial counsel erroneously failed to request a limiting instruction specifying the State's burden to prove that the child molestation against P. K. occurred in the manner alleged in the indictment. He argues that in the absence of the limiting instruction, the jury was permitted to find him guilty of the child molestation offense based upon the evidence describing how the tattooing act occurred, which was contrary to the specific allegation in the indictment. This claim is without merit.

It is axiomatic that, in criminal prosecutions, the court's instructions must be tailored to fit the charge in the indictment and the evidence adduced at trial. This is particularly true when the offense charged may be committed in one of several ways, but the indictment charges one specific method. . . . Averments in an indictment as to the specific manner in which a crime was committed are not

mere surplusage. Such averments must be proved as laid, or the failure to prove the same will amount to a fatal variance and a violation of the defendant's right to due process of law.

(Citations and punctuation omitted.) *Talton v. State*, 254 Ga. App. 111, 112 (1) (561 SE2d 139) (2002). Accordingly, the trial court's instructions must sufficiently limit the jury's consideration to the allegations and elements of the offense as charged in the indictment. See *Bryant v. State*, 249 Ga. App. 383, 384 (1) (547 SE2d 721) (2001). In determining whether a charge contained error, jury instructions must be read and considered as a whole. See *Ceasar v. State*, 239 Ga. App. 752, 754 (2) (521 SE2d 866) (1999).

In its instructions to the jury, the trial court read the contents of the indictment, including the count charging Boatright with the child molestation of P. K. based upon his acts of "getting on the bed next to [P. K.], exposing his nude body to [P. K.], and rubbing her leg[.]" The trial court further charged that the State had the burden of proving every material allegation in the indictment beyond a reasonable doubt and provided a copy of the indictment to the jury to aid them during their deliberations. As such, the trial court's jury instructions, as a whole, properly distinguished the acts upon which the child molestation offense was based and limited the jury's determination of the child molestation offense to those acts set forth in that count of the indictment. See *James v. State*, 268 Ga. App. 851, 852-853 (1) (602 SE2d 854) (2004); *Ceasar*, supra, 239 Ga. App. at 754 (2).

2. Lastly, Boatright contends that the trial court erred in denying his motion to sever the offenses. In his motion, Boatright sought to sever the sex offenses involving B. D. from the other offenses involving C. D. and P. K. He also sought to sever the tattooing offenses from the sex offenses. Notwithstanding Boatright's arguments to the contrary, we hold that the trial court did not abuse its discretion in denying the motion.[5]

Severance is required if offenses are joined solely because they are similar in nature. Severance is not mandated, however, where the similarity of the offenses is coupled with evidence of a pattern which shows a common motive, plan, scheme, or bent of mind. Where the modus operandi of the perpetrator is so strikingly alike, that the

---

[5] Boatright's motion to sever was untimely since it was not filed within ten days after the date of arraignment. See OCGA § 17-7-110 ("All pretrial motions . . . shall be filed within ten days after the date of arraignment, unless the time for filing is extended by the court."). Nevertheless, the trial court agreed to hear and decide the motion on its merits.

totality of the facts unerringly demonstrate and designate the defendant as the common perpetrator, the offenses may be joined — subject to the right of the defendant to severance in the interests of justice. Severance in this particular kind of circumstance lies within the sound discretion of the trial judge.

(Citations and punctuation omitted.) *Loyless v. State*, 210 Ga. App. 693, 695 (3) (436 SE2d 814) (1993).

Here, although the charged sex offenses involved different female victims and occurred on different dates, they all reflected Boatright's pattern of touching or fondling adolescent females while they were sleeping in Boatright's home. See *Freeman v. State*, 202 Ga. App. 185, 188 (7) (413 SE2d 774) (1991); *Seidel v. State*, 197 Ga. App. 14, 16 (3) (397 SE2d 480) (1990). As argued by the State, all of the sex offenses were similar and showed Boatright's common motive, plan, scheme, or bent of mind to satisfy his sexual desires. See id. In addition, the circumstances surrounding the tattooing offenses would have been admissible at the trial of the sex offenses to show Boatright's lustful disposition and bent of mind. See *Freeman*, supra, 202 Ga. App. at 188 (7). See also *Dickerson v. State*, 304 Ga. App. 762, 765 (1) (697 SE2d 874) (2010) (concluding that severance was not required since the circumstances related to defendant's sexual exploitation charges would have been admissible as similar transaction evidence in the trial of defendant's child molestation and aggravated sexual battery charges); *Carroll v. State*, 199 Ga. App. 8, 10 (403 SE2d 875) (1991) ("Where the evidence of one crime would be admissible in the trial of the other crime, it cannot be said that the trial court abused its discretion in denying appellant's motion for severance.") (citations and punctuation omitted). Therefore, severance was not required.

Moreover, this case was not so complex as to impair the jury's ability to distinguish the evidence and apply the law intelligently as to each offense. See *Loyless*, supra, 210 Ga. App. at 695 (3). "Consequently, we conclude that the trial court did not abuse its discretion in denying [Boatright's] motion to sever and motion for new trial on this basis." Id.

*Judgment affirmed. Phipps, P. J., and McFadden, J., concur.*

DECIDED MARCH 8, 2011.

*Benjamin D. Goldberg, Michael R. McCarthy*, for appellant.

*Kermit N. McManus, District Attorney, Stephen E. Spencer, Assistant District Attorney*, for appellee.