**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 29, 2014**

# In the Court of Appeals of Georgia

A14A1284. HOLMAN v. THE STATE.

DILLARD, Judge.

Following a trial by jury, Ulysses Holman was convicted of driving under the influence to the extent that he was less-safe to drive (DUI less safe) and serious injury by vehicle. On appeal from these convictions, Holman contends that (1) the evidence is insufficient to sustain his convictions, (2) the trial court erred by giving certain instructions to the jury, and (3) he received ineffective assistance of counsel when his attorney failed to object to improper opinion testimony. For the reasons set forth *infra*, we affirm.

1. At the outset, before addressing the facts of this case or Holman's enumerations of error, we note that this Court previously issued an opinion in this appeal on September 9, 2014 (which has since been recalled and vacated), in which

we also affirmed Holman's convictions, albeit for a different reason. In that original opinion, we based our decision on the fact that in his notice of appeal, Holman did not request that a trial transcript be included as part of the appellate record. And because no transcript was requested, we believed that a transcript had not been transmitted to this Court for our review.

Specifically, we affirmed Holman's convictions in that earlier opinion because OCGA § 5-6-37 dictates that a notice of appeal shall set forth, *inter alia*, "a designation of those portions of the record to be omitted from the record on appeal," and "*[i]n addition*, the notice shall state whether or not any transcript of evidence and proceedings is to be transmitted as a part of the record on appeal."[1] But here, Holman's notice of appeal stated only that nothing should be omitted from the record on appeal. The notice did not request that a transcript of evidence and proceedings be transmitted to this Court as a part of the appellate record, and, in such a case, we are not at liberty to infer otherwise. Indeed, as our Supreme Court has explicitly held, "[t]he specification that 'nothing' is to be omitted from the record would not infer that the transcript is to be included, since the appellant is required to state whether the

---

[1] OCGA § 5-6-37.

2

transcript will be filed, in addition to designating any portion of the record to be omitted."[2]

The apparent absence of the trial transcript in the case *sub judice* made it impossible for this Court to review Holman's enumerations of error concerning the sufficiency of the evidence, the court's instructions to the jury, and trial counsel's allegedly ineffective assistance.[3] And it is well established that it is the burden of the complaining party to "compile a complete record of what happened at the trial level, and when this is not done, there is nothing for the appellate court to review."[4] Additionally, when no transcript is included in the record on appeal we "must assume

---

[2] *Steadham v. State*, 224 Ga. 78, 80 (1) (159 SE2d 397) (1968); *accord Tempo Carpet Co. v. Collectible Classic Cars of Ga., Inc.*, 166 Ga. App. 564, 564 (305 SE2d 26) (1983).

[3] *See Okeke v. State*, 272 Ga. App. 529, 529 (613 SE2d 125) (2005) ("The absence of the trial transcript makes it impossible for this Court to review [the appellant's] enumerations of error concerning the sufficiency of the evidence, the admission of evidence, and other rulings below."); *Watts v. State*, 258 Ga. App. 579, 579 (574 SE2d 567) (2002) ("The absence of the trial and sentencing transcripts makes it impossible for this Court to review [the appellant's] various enumerations of error concerning factual merger, double jeopardy, and improper sentencing.").

[4] *Okeke*, 272 Ga. App. at 529 (punctuation omitted); *accord Watts*, 258 Ga. App. at 579.

that the evidence was sufficient to support the judgment."[5] We therefore affirmed the judgment of the trial court on this ground.[6]

On September 22, 2014, Holman's counsel belatedly filed a Notice of Intention to Apply for Writ of Certiorari to the Supreme Court of Georgia,[7] rather than filing a motion for reconsideration.[8] On September 30, 2014, Holman—not his counsel—called this Court's clerk's office to make inquiry regarding the reasons for our disposition in the prior appeal and was directed to speak with his counsel regarding same. Nevertheless, following that call, our clerk's office, on its own initiative, discovered that a transcript of proceedings was indeed transmitted to this court in a *prior appeal* by Holman.

---

[5] *Tempo Carpet Co.*, 166 Ga. App. at 564 (punctuation omitted).

[6] *See Okeke*, 272 Ga. App. at 529; *Watts*, 258 Ga. App. at 579; *see also Arnold v. State*, 276 Ga. App. 680, 681 (624 SE2d 258) (2005) (holding, when appellant "did not request that the entire record be transmitted to this Court on appeal," that "we must assume that the trial court ruled correctly and affirm").

[7] *See* Court of Appeals Rule 38 (1) ("Notice of intention to petition for a writ of certiorari shall be filed with the Clerk of this Court *within 10 days after the judgment* or, if motion for reconsideration is filed, within 10 days after the order ruling on reconsideration. Filing a motion for reconsideration is not a prerequisite for filing a petition for writ of certiorari." (emphasis supplied)).

[8] *See* Court of Appeals Rule 37 (specifying the procedures for filing motions for reconsideration).

On March 29, 2012, Case No. A12A1504 was docketed with this Court, and in that case, Holman sought to appeal the same convictions at issue in the case now before us. At that time, Holman filed his appeal *pro se* and, as is the case in his current appeal, did not specify in his notice of appeal whether or not a transcript of evidence and proceedings were to be transmitted to this Court. Nevertheless, it appears that the lower court *sua sponte* transmitted all available transcripts despite Holman's failure to comply with OCGA § 5-6-37.

However, prior to filing an appellate brief in Case No. A12A1504, Holman filed a motion to remand the case to the trial court for the appointment of appellate counsel, which we granted on May 11, 2012; and on that same date, we issued a remittitur to the lower court. Thereafter, in May 2012, the trial court appointed appellate counsel to represent Holman; however, no appeal was filed and a Motion for Out of Time Appeal was granted on January 30, 2013. But still, no appeal was filed until after Holman and the State subsequently entered into a consent order for the filing of an out-of-time-appeal in September 2013. Finally, a notice of appeal in the current case was filed on September 16, 2013, the contents of which are described *supra*.

During the investigation that ensued in our clerk's office following the September 30, 2014 phone call from Holman, this Court discovered that in early February 2014, the trial court called this Court to inform it that a second appeal would be forthcoming, at which point a hold was placed on the record from the prior appeal in order to preserve it.[9] This proved to be a stroke of luck for Holman because: (1) the record from Case No. A12A1504 had not *already* been recycled by this Court;[10] and

[9] We note that the current appeal was not docketed until March 13, 2014.

[10] It is the policy of the Court of Appeals to recycle records one year after a remittitur issues to the trial court unless one or more parties request a hold (and again, a remittitur issued in the prior appeal in May 2012). *See* Court of Appeals Rule 42 (b) ("One year after the remittitur has issued, the party paying for the record and transcript may claim them. Otherwise, all records, record appendices and transcripts shall be recycled, unless the parties notify the Clerk, in writing, that the record should be maintained, and the reason therefore."). In fact, in any Notice of Remittitur issued to parties, this Court includes the following notice in bold:

> THIS COURT WILL DESTROY THE CASE RECORD AND TRANSCRIPTS ONE YEAR AFTER THE REMITTITUR DATE ABOVE.

> The Court will maintain the record and/or transcript in the above appeal for a period of one year after the remittitur date unless one or more of the parties notifies the Court, in writing, to maintain the record for an additional six months, and the reason therefor. The requesting party must send an additional request fourteen days before the expiration of

6

(2) it was, once again, the trial court that undertook the responsibility of ensuring that a transcript was included on appeal *despite* Holman's repeated failures to make any of the statutorily-required specifications in his notice of appeal.[11]

each sixth-month period to avoid the record being destroyed. You will receive no further notice before the record is destroyed.

The original record will remain in the trial court.

The Court will preserve the Briefs, Orders, Substantive Motions, Opinions, Docketing Notices, and other documents in some format that will be available for inspection at either our office or at The Georgia Department of Archives.

[11] *See* OCGA § 5-6-37. We note here that in one of many motions for new trial that Holman filed *pro se* in the lower court, he appears to have attached as an exhibit a full transcript from the trial of his case, which resulted in a duplicate of the transcript appearing in the record. *See Steadham*, 224 Ga. at 80 (1) (suggesting that the record and transcript are two separate entities by explaining that "[t]he specification that 'nothing' is to be omitted from the record would not infer that the transcript is to be included, since the appellant is required to state whether the transcript will be filed, in addition to designating any portion of the record to be omitted"). This does not, however, amount to a lawful transmission of the transcript to this Court. *See* OCGA § 5-6-41 (e) ("Where a civil or criminal trial is reported by a court reporter and the evidence and proceedings are transcribed, the reporter shall complete the transcript and file the original and one copy thereof with the clerk of the trial court, together with the court reporter's certificate attesting to the correctness thereof."); OCGA § 5-4-42 ("Where there is a transcript of evidence and proceedings to be included in the record on appeal, the appellant shall cause the transcript to be prepared and filed as provided by Code Section 5-6-41 . . . ."); OCGA § 5-6-43 (a)

In sum, neither Holman nor Holman's counsel took *any* action to ensure that (1) the transcript transmitted *sua sponte* by the trial court in the prior appeal was held in this Court for use in the subsequent appeal *or* (2) this Court was aware that Holman intended to use the transcript transmitted with the prior appeal as the transcript in the current appeal.[12] Indeed, although the trial court requested that the transcript be held

("Within five days after the date of filing of the transcript of evidence and proceedings by the appellant or appellee, as the case may be, it shall be the duty of the clerk of the trial court to prepare a complete copy of the entire record of the case, omitting only those things designated for omission by the appellant and which were not designated for inclusion by the appellee, together with a copy of the notice of appeal and copy of any notice of cross appeal, with date of filing thereon, and transmit the same, together with the transcript of evidence and proceedings, to the appellate court, together with his certificate as to the correctness of the record."); *see also Chancey v. State*, 256 Ga. 415, 435-36 (11) (349 SE2d 717) (1986) ("Where the appealing party is the defendant in a felony case, and where the defendant states in his notice of appeal that a transcript is to be transmitted as part of the appellate record, it is the defendant's statutorily mandated duty to cause the court reporter to prepare and file an original and one copy of the transcript with the clerk of the trial court within 30 days after the filing of the notice of appeal unless an extension of time is obtained."); *cf. Grimes v. Slaughter*, 217 Ga. 116, 116-17 (121 SE2d 110) (1961) ("Where, as in the present case, the documentary evidence essential to a determination of the error complained of is not incorporated in the bill of exceptions, or attached as an exhibit and properly identified by the trial judge, or embodied in an approved transcript of the evidence, it has not been brought to this court in the manner prescribed by law, and can not be considered as evidence.").

[12] The most that can be said about any such attempt by Holman is that, on March 25, 2014 (prior to filing the appellant's brief), his appellate counsel filed a motion to consolidate/motion for joinder of Case No. A12A1504 and Case No. A14A1284. And after setting forth the procedural history of the prior remand, the

over a year after the remittitur had been issued in the prior appeal (and *after* Holman filed his statutorily deficient notice of appeal), it was, nevertheless, *Holman* who had a statutory duty to include in his notice of appeal that no transcript was to be transmitted with the current appeal.[13] And to the extent Holman wished to rely upon the transcript transmitted by the trial court in the prior appeal (which was being held in this Court as a matter of courtesy to the trial court), he had a duty under OCGA § 5-6-37 to specify in the notice of appeal that he was not requesting the transmission of the transcript in this appeal because one had previously been transmitted in a prior appeal and was already on hold at the Court. Suffice it to say, even when this Court has been notified by an appellant that a transcript should be placed on hold, it remains the "primary responsibility of the appropriate parties *and not this [C]ourt* to ensure that all documents relevant to the disposition of an appeal be duly filed with the clerk

---

motion requested the following: "Because both Court of Appeals case numbers refer to the same Superior Court case, Appellant moves to join the two Court of Appeals case numbers." But the motion made no reference whatsoever to the previously transmitted transcript and, based on its vague request, was denied as moot. Thus, such a motion does not—and, in fact, did not—put this Court on notice that Holman intended to use the transcript from his previous appeal in this appeal.

[13] *See* OCGA § 5-6-37.

9

of this [C]ourt prior to the issuance of our appellate decision."[14] As such, an appellant *must* include in the notice of appeal his or her intention to rely upon a previously transmitted transcript in order to satisfy the dictates of OCGA § 5-6-37. This, Holman did not do. And one cannot complain of an appellate ruling, order, or judgment that "his own legal strategy, appellate procedure or conduct aided in causing."[15]

Nevertheless, despite the repeated procedural errors by Holman, and despite appellate counsel's election to bypass the filing of a motion for reconsideration,[16] we chose to *sua sponte* vacate our prior opinion and reinstate this case to address Holman's enumerations of error on the merits.[17] We did so because our Court had not

---

[14] *Williams v. Food Lion, Inc.*, 213 Ga. App. 865, 867 (446 SE2d 221) (1994) (on motion for reconsideration).

[15] *Id.*

[16] *See* Court of Appeals Rule 37 (e) ("A reconsideration shall be granted on motion of the requesting party, only when it appears that the Court overlooked a material fact in the record, a statute or a decision which is controlling as authority and which would require a different judgment from that rendered, or has erroneously construed or misapplied a provision of law or a controlling authority.").

[17] We note that Holman had not yet filed a petition for writ of certiorari when we vacated the original opinion. As such, this Court retained jurisdiction over the appeal at the time the original opinion was recalled by the panel. *Cf.* GA. CONST. Art. 6, § 1, ¶ 4 ("Each court may exercise such powers as necessary in aid of its jurisdiction or to protect or effectuate its judgments . . . .").

yet addressed the unique procedural situation presented by this appeal in a published opinion. This opinion, then, shall serve to place future appellants on notice that similar procedural errors may result in automatic affirmance of a trial court's decision.

2. As previously noted, Holman argues that his convictions must be overturned because (1) the evidence is insufficient to sustain those convictions, (2) the trial court erred by giving certain instructions to the jury, and (3) he received ineffective assistance of counsel when his attorney failed to object to improper opinion testimony. We disagree.

Viewed in the light most favorable to the jury's verdict,[18] the record reflects that in the late afternoon of June 30, 2007, Holman was traveling on Interstate 85 when his car crossed the median and made impact with the elderly victim's vehicle. As a result of this collision, the victim lost consciousness at the scene, sustained lacerations to the face, bruising to the chest, bruising to internal organs, a fractured vertebrae, and an injury to the bowel that was so severe it required removal of a portion of that organ and left the victim with bulging intestines.

---

[18] *See, e.g.*, *Goolsby v. State*, 299 Ga. App. 330, 330 (682 SE2d 671) (2009).

Witnesses to the crash testified that, prior to the accident, Holman's vehicle weaved around the road; was traveling at over 75 miles per hour, or at an "incredible rate of speed"; aggressively passed other cars on the interstate; and then careened over the median, fish-tailed across the road, and struck the victim's vehicle. One of these witnesses also testified that when she approached Holman to render aid, she immediately noticed that he "reeked" of an alcoholic beverage and had "very, very red" eyes.

Likewise, the responding law-enforcement officer testified that Holman smelled of an alcoholic beverage, had watery and bloodshot eyes, and spoke with slurred, slow speech. The officer also testified that Holman did not understand an initial explanation of Georgia's implied-consent notice and became irate and belligerent when the officer explained it again before refusing to consent to a State-administered chemical test because he "knew" that he would have alcohol in his system. According to the officer, Holman also admitted to drinking heavily the night before, with his last beverage being consumed at approximately 5:00 a.m. Lastly, the officer testified that, given the foregoing, he considered Holman an impaired driver. Holman was convicted by a jury of the offenses enumerated *supra*, and this appeal follows.

At the outset, we note that on appeal from a criminal conviction, "the defendant is no longer entitled to a presumption of innocence and we therefore construe the evidence in the light most favorable to the jury's guilty verdict."[19] With this guiding principle in mind, we turn now to Holman's enumerations of error.

(a) *Sufficiency of the Evidence.* Holman first contends that the evidence is insufficient to sustain his convictions for DUI less safe and serious injury by vehicle. We disagree.

First, a person commits the offense of DUI less safe when he or she is in physical control of a moving vehicle while "[u]nder the influence of alcohol to the extent that it is less safe for the person to drive . . . ."[20] And here, there was testimony that prior to the accident, Holman was driving aggressively at an excessive rate of speed, weaving about the road before crossing the median and making impact with the victim's car. There was also testimony from a witness and law-enforcement officer that Holman "reeked" of an alcoholic beverage, had "very, very red" and bloodshot eyes, spoke with slurred speech, became belligerent, refused to submit to

---

[19] *Muse v. State*, 323 Ga. App. 779, 780 (748 SE2d 136) (2013) (punctuation omitted).

[20] OCGA § 40-6-391 (a) (1).

13

a State-administered test because he "knew" it would test positive for alcohol, and admitted to drinking heavily the night before. Accordingly, this evidence was sufficient to sustain Holman's conviction for DUI less safe.[21]

Second, a person commits the offense of serious injury by vehicle when he or she,

> without malice, . . . cause[es] bodily harm to another by depriving him of a member of his body, by rendering a member of his body useless, by seriously disfiguring his body or a member thereof, or by causing organic brain damage which renders the body or any member thereof useless through the violation of Code Section 40-6-390 or 40-6-391 . . . . .[22]

Holman does not challenge the sufficiency of the evidence to establish that he caused the requisite bodily harm, but instead contends that the evidence is insufficient to

---

[21] *See, e.g.*, *Hoffman v. State*, 275 Ga. App. 356, 358 (1) (620 SE2d 598) (2005) (holding that evidence was sufficient to sustain conviction based on defendant's "driving maneuvers, odor of alcohol, appearance, and refusal to submit to the field sobriety evaluations, together with [officer's] opinion that [defendant] was under the influence to the extent that he was a less safe driver"); *Drogan v. State*, 272 Ga. App. 645, 647 (1) (b) (613 SE2d 195) (2005) ("Methods of proof may include evidence of (i) erratic driving behavior, (ii) refusal to take field sobriety tests and the breath or blood test, and (iii) the officer's own observations (such as smelling alcohol and observing strange behavior) and resulting opinion that the alcohol made it less safe for the defendant to drive.").

[22] OCGA § 40-6-394.

sustain his conviction in this regard because the State failed to prove that he was guilty of DUI less safe.[23] However, as explained *supra*, the State presented sufficient evidence to sustain the conviction for DUI less safe and, accordingly, presented sufficient evidence to sustain Holman's conviction for serious injury by vehicle.[24]

(b) *Charges to the Jury.* Next, Holman takes issue with the trial court's charges to the jury as to his refusal to submit to a State-administered chemical test and as to serious injury by vehicle. Again, we disagree.

(i) As to his refusal to submit to the State-administered chemical test, Holman alleges that the trial court erred by instructing the jury as follows:

> A Defendant's refusal to take a requested chemical test may be considered as positive evidence creating an inference that the test would show the presence of alcohol. However, such an inference may be rebutted.

---

[23] *See* OCGA § 40-6-391 (a) (1).

[24] *See Dorsey v. State*, 327 Ga. App. 226, 229 (3) (757 SE2d 880) (2014) ("[Appellant] does not challenge the sufficiency of the evidence to establish that he caused the officer bodily harm for purposes of the crime. Rather, he asserts that the evidence was not sufficient to show that he violated OCGA § 40-6-391, as required by the statute. However, as discussed supra, the evidence was sufficient to show that [Appellant] was guilty of DUI less safe. Accordingly, we find that any rational trier of fact could have found [Appellant] guilty beyond a reasonable doubt of serious injury by vehicle.").

15

Holman contends that this instruction improperly shifted the burden of proof, but we have previously rejected this very same argument with regard to an identical instruction.[25] Thus, this enumeration is wholly without merit.

(ii) As to the serious-injury-by-motor-vehicle instruction, Holman contends that the trial court gave the charge in such a way as to permit the jury to convict him in a manner not alleged in the indictment when the court included all of the various ways in which the crime may be committed, including "organic brain injury." And here, the indictment alleged that Holman committed the offense by "depriving [the victim] of a member of his body and by rendering a member of his body useless, to wit, a closed head injury, resulting in a loss of consciousness, laceration of the right brow, bruised liver and injury to his spine . . . ."

It is unquestionable that, in criminal prosecutions, "the court's instructions must be tailored to fit the charge in the indictment and the evidence adduced at

---

[25] *See Bravo v. State*, 249 Ga. App. 433, 434-35 (2) (548 SE2d 129) (2001) ("The charge given by the court involved a permissive, not a mandatory inference. Instructing a jury that they 'may' infer the presence of alcohol is far different from an instruction that such fact 'shall' be inferred."); *see also Crusselle v. State*, 303 Ga. App. 879, 883 (2) (b) (694 SE2d 707) (2010) (reiterating the holding in *Bravo*).

trial."[26] In particular, this is true when the offense charged "may be committed in one of several ways, but the indictment charges one specific method."[27] Indeed, averments in an indictment as to the specific manner in which a crime was committed are "not mere surplusage,"[28] and "[s]uch averments must be proved as laid, or the failure to prove the same will amount to a fatal variance and a violation of the defendant's right to due process of law."[29] Accordingly, the instructions from the trial court must "sufficiently limit the jury's consideration to the allegations and elements of the

---

[26] *Boatright v. State*, 308 Ga. App. 266, 272 (1) (e) (707 SE2d 158) (2011) (punctuation omitted); *see also Lumpkin v. State*, 249 Ga. 834, 835-37 (2) (295 SE2d 86) (1982) (addressing trial court's failure to limit jury instruction to manner charged in the indictment but holding that any error was cured by limiting instruction).

[27] *Boatright*, 308 Ga. App. at 272 (1) (e) (punctuation omitted); *see also Lumpkin*, 249 Ga. at 836 (2) (acknowledging that it is "reversible error to charge that a crime may be committed by either of two methods, when the indictment charges it was committed by one specific method, and then charge the jury that they may convict the defendant if they find he committed the offense by a method other than the specific type charged in the indictment" (punctuation omitted)).

[28] *Boatright*, 308 Ga. App. at 272-73 (1) (e) (punctuation omitted).

[29] *Id.* (punctuation omitted); *see also Lumpkin*, 249 Ga. at 836 (2) (acknowledging that, when "no remedial instructions [are] given, [such a] charge [is] erroneous as a matter of law because of a fatal variance between the proof at trial and the indictment returned by the grand jury").

17

offense as charged in the indictment."[30] And in determining whether a charge

contained error, "jury instructions must be read and considered as a whole."[31]

Here, the trial court erred by adding "organic brain injury" to its jury charge.

Nevertheless, any defect in the charge was cured by the jury being provided with the

indictment and instructed that the State must prove beyond a reasonable doubt all

material allegations in the indictment and all essential elements of the crimes charged.

Accordingly, the trial court's charge did not constitute reversible error.[32]

(c) *Ineffective Assistance of Counsel.* Finally, Holman asserts that he received

ineffective assistance of counsel when his attorney failed to object to the officer's

---

[30] *Boatright*, 308 Ga. App. at 273 (1) (e); *see also Lumpkin*, 249 Ga. at 836 (2).

[31] *Boatright*, 308 Ga. App. at 273 (1) (e); *see also Lumpkin*, 249 Ga. at 836-37 (2) ("While the specific portion of the charge of which complaint is made when torn asunder and considered as a disjointed fragment may be objectionable, when put together and considered as a whole, the charge is perfectly sound." (punctuation omitted)).

[32] *See, e.g.*, *Short v. State*, 276 Ga. App. 340, 349 (9) (623 SE2d 195) (2005) (holding that a defect to a jury instruction is cured when "the trial court provides the indictment to the jury and instructs that the State must prove beyond a reasonable doubt all material allegations in the indictment and all essential elements of the crimes charged"); *see also Green v. State*, 240 Ga. App. 377, 379-80 (4) (523 SE2d 581) (1999).

testimony that he considered Holman an impaired driver, arguing that this testimony went to the ultimate issue before the jury. Once again, we disagree.

First, we note that, in general, when a defendant claims that his trial counsel was ineffective, he has the burden of establishing that "(1) his attorney's representation in specified instances fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[33] When a trial court determines that a defendant did not receive ineffective assistance, we will affirm that decision on appeal unless it is clearly erroneous,[34] and here we discern no such error.

It is well established that a defendant cannot show ineffective assistance of counsel by the failure to make a meritless objection.[35] And here, any objection to this testimony would have lacked merit because an officer may testify that, in his opinion,

---

[33] *Muldrow v. State*, 322 Ga. App. 190, 193 (2) (b) (744 SE2d 413) (2013) (punctuation omitted); *accord Owens v. State*, 317 Ga. App. 821, 823 (1) (733 SE2d 16) (2012).

[34] *Muldrow*, 322 Ga. App. at 193 (2) (b); *Owens*, 317 Ga. App. at 823 (1).

[35] *Porras v. State*, 295 Ga. 412, 419 n.8 (3) (761 SE2d 6) (2014) ("The failure to make a meritless objection cannot amount to ineffective assistance." (punctuation omitted)); *accord Bradley v. State*, 292 Ga. 607, 614 (5) (740 SE2d 100) (2013).

a defendant was an impaired, or a less safe, driver.[36] Thus, Holman did not receive ineffective assistance in this regard.

Accordingly, for all the foregoing reasons, we affirm Holman's convictions.

*Judgment affirmed. Doyle, P. J., and Miller, J., concur.*

---

[36] *See, e.g.*, *Driver v. State*, 240 Ga. App. 513, 515 (3) (523 SE2d 919) (1999) ("[W]e hold that a court in its discretion may allow a trained and experienced officer . . . to render [an opinion that the driver was under the influence of alcohol to the extent that she was less-safe to drive] based on the officer's observations of the defendant."); *Church v. State*, 210 Ga. App. 670, 671 (2) (436 SE2d 809) (1993) (holding that trial court did not err in permitting testimony by officer that his opinion was that defendant was a less-safe driver).