**THIRD DIVISION
BARNES, P. J.,
DILLARD AND BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**June 11, 2014**

# In the Court of Appeals of Georgia

A14A0571. SOWELL v. THE STATE.

DILLARD, Judge.

Following trial, a jury convicted Cody Sowell on one count of aggravated child molestation, two counts of child molestation, and one count of possession of a controlled substance (*i.e.*, hydrocodone). Sowell appeals his convictions and the denial of his motion for new trial, challenging the sufficiency of the evidence and arguing that the trial court erred in (1) failing to limit the manner in which the jury could consider evidence of prior difficulties and (2) denying his claims of ineffective assistance of counsel. For the reasons set forth *infra*, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that some time near the end of the summer of 2011, three-year-old A. H. and her aunt

---

[1] *See, e.g.*, *Powell v. State*, 310 Ga. App. 144, 144 (712 SE2d 139) (2011).

were watching a movie together while the child's father and Sowell, who was married to the father's sister, were working on Sowell's truck outside. Upon hearing the truck start up rather loudly, A. H. asked her aunt if that was "Uncle Cody's truck." When her aunt responded that it was, A. H. replied, "Oh, Uncle Cody licked my tootie." Alarmed, the aunt asked A. H. what she meant, at which point the child repeated the statement while pointing to her vaginal area. The aunt called A. H.'s grandmother into the room and then asked A. H. to repeat what she had just said. A. H. repeated her claim and, again, pointed to her vaginal area. A few hours later, A. H.'s mother returned home from work, and A. H.'s aunt and grandmother immediately told her of A. H.'s outcry. Upset but unsure of what to believe, A. H.'s mother decided against going to the police at that time but also resolved that she would not allow her daughter to be alone with Sowell.

On October 11, 2011, a few months after A. H.'s outcry to her aunt and grandmother, Sowell and his family were staying with A. H.'s family while he coped with some financial difficulties. That night, after everyone in the home went to bed, A. H.'s mother heard noises from A. H.'s room via the baby monitor she had placed there. As A. H.'s mother walked down the hall to investigate, she noticed that A. H.'s bedroom door, which she had closed earlier after putting A. H. to bed, was now

2

cracked open. Quietly peering into the bedroom, A. H.'s mother saw Sowell standing next to A. H.'s bed with the child's legs straddled around him. At that point, A. H.'s mother flung open the bedroom door and yelled at Sowell as he placed his genitals back into his pants. She then picked up her daughter and noticed that A. H.'s underwear had an indentation in the vaginal area as if she had been touched there. And as she was carried from her bed room, A. H. told her mother that "Uncle Cody touched her tootie with his big tootie."

Subsequently, A. H.'s mother took the child to the local hospital. There, she was examined by a nurse, who noted that A. H.'s vaginal area appeared red and irritated. And during this examination, A. H. told the nurse that "Uncle Cody licked her tootie," which she identified by pointing between her legs, and then noted that he "put his tootie back in his pants." Later that same night, A. H.'s mother took her daughter to a child-advocacy center, where a sexual-assault nurse examiner made similar findings, including that A. H. referred to her vagina as her "tootie." Additionally, A. H. was interviewed by a counselor, while the investigating deputy observed the interview via a video monitor in another room. During that interview, A. H. claimed that Sowell licked and touched her "wee wee."

Sowell was arrested later that evening, and as he was being processed, the arresting sheriff's deputy found a green pill in his pocket. Sowell identified the pill as hydrocodone and admitted that he did not have a prescription for the drug. One month later, he was charged, via indictment, with one count of aggravated child molestation,[2] two counts of child molestation,[3] and one count of possession of hydrocodone.[4] Prior to his trial, Sowell filed a motion in limine to exclude A. H.'s aunt from testifying about the child's initial outcry, arguing that such testimony constituted similar-transaction evidence for which the State failed to provide sufficient notice. However, at the State's behest, the trial court ultimately ruled that such testimony was admissible as evidence of prior difficulties between the parties.

Thereafter, the matter went to trial, during which A. H.'s aunt recounted the child's initial outcry, and A. H.'s mother testified regarding the night she found Sowell in A. H.'s bedroom. Both nurses also testified regarding their examinations of A. H., and the sheriff's deputy discussed his investigation and observation of A. H.'s forensic interview, which was played for the jury. Additionally, A. H. was called

---

[2] *See* OCGA § 16-6-4 (c).

[3] *See* OCGA § 16-6-4 (a) (1).

[4] *See* OCGA § 16-13-30 (a), (g); OCGA § 16-13-27 (4) (D).

4

as a witness and testified that Sowell touched her where her "tootie lives" while motioning toward her vaginal area. But when asked to point out Uncle Cody in the courtroom, A. H. stated that he was not present.

After the State rested, Sowell called A. H.'s great-grandmother, who testified that she was visiting with A. H. and her mother a few weeks after Sowell's arrest and that during this visit A. H.'s mother, in commenting on the case, stated: "[T]hey're trying to say it was [A. H.'s father]." According to the great-grandmother, A. H. then replied, "I thought you told me it was Uncle Cody." Finally, Sowell testified in his own defense, claiming that he never inappropriately touched A. H. and that at the time her mother found him in A. H.'s room, he was merely putting A. H. back into bed after she had wandered into the hallway. Sowell did admit, however, that he had a hydrocodone pill in his possession at the time of his arrest and that he did not have a prescription for the drug.

At the conclusion of the trial, the jury convicted Sowell on all four counts in the indictment. Subsequently, Sowell obtained new counsel and filed a motion for new trial, which alleged, *inter alia*, that his trial counsel rendered ineffective assistance. The trial court then held a hearing on Sowell's motion, during which his

trial counsel testified. Ultimately, the court refused to grant a new trial. This appeal follows.

At the outset, we note that when a criminal conviction is appealed, the evidence must be viewed in the light most favorable to the verdict, and the appellant no longer enjoys a presumption of innocence.[5] And, of course, in evaluating the sufficiency of the evidence, "we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt."[6] Thus, the jury's verdict will be upheld "[a]s long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case."[7] With these guiding principles in mind, we turn now to Sowell's specific claims of error.

---

[5] *See English v. State*, 301 Ga. App. 842, 842 (689 SE2d 130) (2010).

[6] *Jones v. State*, 318 Ga. App. 26, 29 (1) (733 SE2d 72) (2012) (punctuation omitted); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 S.Ct. 2781, 61 LE2d 560) (1979).

[7] *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001) (punctuation omitted).

1. Sowell contends that the evidence was insufficient to support his convictions on the aggravated child molestation count and the two child molestation counts. We disagree.

A person commits the offense of child molestation when he or she "[d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person. . . ."[8] And a person commits the offense of aggravated child molestation "when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy."[9]

Count 1 of the indictment in this matter charged Sowell with aggravated child molestation by alleging that on or about October 11, 2011, he "lick[ed] the vagina of [A. H.] . . ." And the State presented sufficient evidence of this offense when the hospital nurse testified that A. H. told her that Sowell licked her "tootie," which was the child's term for her vagina.[10] In addition, Count 2 of the same indictment charged

_____

[8] OCGA § 16-6-4 (a) (1).

[9] OCGA § 16-6-4 (c).

[10] *See Maloney v. State*, 317 Ga. App. 460, 461 (731 SE2d 133) (2012) (holding that testimony that defendant licked victim's vagina was sufficient to support aggravated child molestation conviction); *see also* former OCGA § 24-4-8 ("The

7

Sowell with child molestation by alleging that on October 11, 2011, he "touch[ed] the vagina of [A. H.] . . .," and Count 3 alleged that he committed the same offense on that same date by "showing the penis of the accused to [A. H.] . . ." And here, the State presented testimony from A. H.'s mother that Sowell hurriedly placed his genitals back in his pants when she flung open the door to A. H.'s room and that the vaginal area of A. H.'s underwear at that time was indented as if it had been touched. Furthermore, A. H. testified at trial that Sowell touched her "tootie" and told her mother and the hospital nurse that he did so. In addition, both nurses testified that the child's vagina was red and irritated, which was consistent with it having been touched. Accordingly, the evidence was also sufficient to support both charges of child molestation.[11]

---

testimony of a single witness is generally sufficient to establish a fact."), *repealed by* Ga. Laws 2011, Act 52, § 2. OCGA § 24-14-8, which became effective January 1, 2013, contains language nearly identical to former OCGA § 24-4-8, but because Sowell was tried on June 7 and 8, 2012, Georgia's new evidence code was not applicable. *See* Ga. Laws 2011, Act 52, § 101.

[11] *See Lipscomb v. State*, 315 Ga. App. 437, 440 (1) (727 SE2d 221) (2012) (holding that evidence that defendant exposed his genitals to victim was sufficient to support his child molestation conviction); *Dew v. State*, 292 Ga. App. 631, 633 (1) (b) (665 SE2d 715) (2008) (holding that testimony that defendant touched victim's vaginal area was sufficient and that "a conviction for child molestation does not require a showing that the victim was touched beneath her clothing" (punctuation omitted)).

Nevertheless, Sowell argues that the video of A. H.'s forensic interview was not adequately authenticated by the sheriff's deputy at the time it was introduced. Thus, Sowell contends that A. H.'s statements during the interview were hearsay and without probative value.[12] Again, we disagree.

Generally, a videotape is admissible where "the operator of the machine which produced it, or one who personally witnessed the events recorded testifies that the videotape accurately portrayed what the witness saw take place at the time the events occurred."[13] Here, although the person who conducted the forensic interview of A. H. did not testify, the investigating deputy testified at trial that he was present when the interview was recorded and watched the interview via a video monitor in another room. And when asked by the State whether the images depicted on the video accurately portrayed the interview as he witnessed it, the deputy responded affirmatively. But focusing on the word "images," Sowell argues that the deputy's testimony demonstrates visual authentication but fails to demonstrate that the deputy

---

[12] *See Grindle v. State*, 299 Ga. App. 412, 417 (1) (b) n.4 (683 SE2d 72) (2009) ("Hearsay testimony is not only inadmissible but wholly without probative value, and its introduction without objection does not give it any weight or force whatever in establishing a fact." (punctuation omitted)).

[13] *Phagan v. State*, 268 Ga. 272, 281 (5) (486 SE2d 876) (1997).

also *heard* what was being said during the interview. However, Sowell's interpretation of the deputy's testimony strains credulity. As previously noted, the deputy stated that he observed the interview as it was being recorded, and to construe such a statement as meaning that he could see but not hear what transpired defies common sense.

Furthermore, if trial counsel desires to preserve an objection as to a specific point, "the objection must be on that specific ground" in order for this Court to consider it.[14] Here, Sowell failed to object in any way to the video's admission and therefore he has waived this issue.[15] But even assuming *arguendo* that the video was improperly admitted and constituted hearsay, A. H.'s interview statements were cumulative of other evidence at trial and, thus, Sowell was not prejudiced.[16]

2. Sowell also contends that the evidence was insufficient to support his conviction on the charge of possession of hydrocodone. Once again, we disagree.

---

[14] *Phillips v. State*, 284 Ga. App. 224, 229 (1) (d) (644 SE2d 153) (2007) (punctuation omitted).

[15] *See id.*

[16] *See Stillwell v. State*, 294 Ga. App. 805, 810 (2) (g) (670 SE2d 452) (2008) (holding that trial counsel's failure to object to admissibility of victim's videotaped interview did not prejudice defendant because video was cumulative of other evidence).

During Sowell's trial, the investigating deputy testified that after Sowell told him that the pill found in his pocket at the time he was arrested was hydrocodone, the deputy compared the pill to photographs in a pill-identification chart in his office. And based on this comparison, the deputy testified that he confirmed that the pill in Sowell's possession was, indeed, hydrocodone.

Although Sowell did not object to this testimony, he now argues that the deputy's discussion of the pill-identification chart constituted non-probative hearsay, and, therefore, the evidence was insufficient to support his possession conviction. Of course, this argument elides the fact that Sowell took the stand in his own defense, swore an oath to tell the truth, and testified that the pill found in his pocket was hydrocodone. In fact, Sowell further testified that although he did not have a prescription, he used the drug to alleviate back pain. Accordingly, the deputy's testimony regarding the pill-identification chart—even if it constituted hearsay—was merely cumulative of Sowell's sworn testimony, which was sufficient to support his conviction for possession of hydrocodone.[17]

---

[17] *See Martin v. State*, 251 Ga. App. 149, 150 (1) (553 SE2d 827) (2001) (holding that defendant's sworn testimony that bags found on his person contained crack cocaine was sufficient to prove *corpus delicti* and, thus, crime laboratory reports were cumulative and their admission was harmless even if it was error). *Compare Johnson v. State*, 205 Ga. App. 760, 761 (423 SE2d 702) (1992) (holding

3. Sowell contends that the trial court erred in failing to limit the manner in which the jury could consider evidence of prior difficulties. As previously noted, before his trial, Sowell filed a motion in limine to exclude A. H.'s aunt from testifying about the child's initial outcry, arguing that such testimony constituted similar-transaction evidence for which the State failed to provide sufficient notice. But the State argued, and the trial court ultimately ruled, that such testimony was admissible as evidence of prior difficulties between the parties. Indeed, in its order denying Sowell's motion, the trial court specifically held that A. H.'s initial outcry constituted admissible prior-difficulties evidence.

Then, during the charge conference, which occurred after the evidence was closed, Sowell inquired about including a jury instruction on the limited purpose for which the jury could consider prior difficulties. But the State argued that such an instruction was unnecessary because the aunt's testimony regarding A. H.'s initial outcry could be considered as evidence of the offenses alleged in the indictment (despite the fact that the indictment alleged that the offenses occurred on a specific date). The trial court agreed, citing the principle that the date in the indictment was

that defendant's confession to arresting officer cannot establish the corpus delicti, which must be proved beyond a reasonable doubt, independently of the confession).

12

not material to the offense, and, therefore, holding that the jury could convict Sowell if it found that his actions were committed within the statute of limitation, which in this case encompassed all four years of A. H.'s life.[18] Consequently, the court refused to instruct the jury regarding prior difficulties.

> The State and the trial court are certainly correct that when
>
> the exact date is not stated as a material allegation of the time of commission of the offense in the indictment, it may be proved as of any time within the statute of limitations, as long as the defendant is not surprised or prejudiced by presentation of evidence that the offenses occurred at a time substantially different from that alleged in the indictment.[19]

However, when the indictment "specifically alleges the date of the offense is material, the accused may be convicted only if the State's proof corresponds to the date alleged."[20]

---

[18] *See* OCGA §§ 17-3-1 (c); 17-3-2.1 (a) (5).

[19] *Moore v. State*, 319 Ga. App. 766, 776 (8) (d) (738 SE2d 348) (2013) (punctuation omitted).

[20] *State v. Swint*, 284 Ga. App. 343, 344 (2) (643 SE2d 840) (2007) (punctuation omitted); *accord Ledesma v. State*, 251 Ga. 885, 885 (1) (a) (311 SE2d 427) (1984).

Sowell does not contest the trial court's general assessment of the law regarding this issue. Rather, Sowell argues that having decided just prior to trial that A. H.'s aunt's testimony about the child's initial outcry was admissible specifically as evidence of prior difficulties between the parties, the trial court could not change course after both parties rested and allow the jury to consider the testimony for a more expansive purpose, *i.e.*, as evidence of the indicted offenses. In support of this argument, Sowell cites *State v. Johnston*,[21] in which the Supreme Court of Georgia held that if a "trial court decides to rule on the admissibility of evidence prior to trial, the court's determination of admissibility is similar to a preliminary ruling on evidence at a pretrial conference and it *controls* the subsequent course of action, unless modified at trial to prevent manifest injustice."[22] And here, Sowell contends that allowing A. H.'s aunt's testimony to be considered as evidence of the indicted offenses constituted a modification that actually created a manifest injustice.

We agree that the trial court's decision to expand the purposes for which the jury could consider A. H.'s aunt's testimony ran afoul of our Supreme Court's holding in *Johnston*. Moreover, the State's argument that the trial court's pre-trial

---

[21] 249 Ga. 413 (291 SE2d 543) (1982).

[22] *Id.* at 415 (3) (punctuation omitted).

14

ruling merely denied Sowell's motion in limine and admitted A. H.'s aunt's testimony for unlimited purposes is patently belied by the language in the court's order, which explicitly characterized the evidence as "prior difficulties." Nevertheless, it is a fundamental principle that "harm as well as error must be shown for reversal."[23] And here, we do not find that Sowell was harmed by the trial court's ruling.

Whether it was characterized as evidence of prior difficulties or instead as evidence of the indicted offenses, A. H.'s outcry to her aunt was undoubtedly admissible.[24] Indeed, Sowell does not claim that he was surprised by the admissibility of the aunt's testimony in and of itself, and he has not appealed on such grounds. Furthermore, regardless of how this testimony was to be considered by the jury, Sowell's defense—even after the denial of his motion in limine—was that he had never inappropriately touched A. H. Thus, it does not appear that Sowell was

---

[23] *O'Neal v. State*, 288 Ga. 219, 223 (2) (702 SE2d 288) (2010) (punctuation omitted).

[24] *See Rayner v. State*, 307 Ga. App. 861, 864 (1) (706 SE2d 205) (holding that evidence that the victim previously alleged that the defendant inappropriately touched her, conduct not charged in the indictment, was admissible); *Stillwell*, 294 Ga. App. at 809 (2) (e) (same); *Brown v. State*, 287 Ga. App. 857, 860-61 (5) (652 SE2d 807) (2007) (holding that evidence of molestation at a time different than that alleged in the indictment was, nevertheless, sufficient to support defendant's conviction on indicted offense); *Norman v. State*, 278 Ga. App. 497, 499 (4) (629 SE2d 489) (2006) (same).

15

prejudiced by this evidence to the extent that he was deprived of presenting an alibi defense or was otherwise deprived of a fair trial.[25] Accordingly, we find no basis for reversing his convictions.

4. Finally, Sowell contends that the trial court erred in denying his claims of ineffective assistance of counsel. Again, we disagree.

It is well established that in order to prevail on his claim of ineffective assistance of counsel, Sowell must show that his trial counsel's performance was "deficient and that the deficient performance so prejudiced [him] that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different."[26] Additionally, there is a strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct, and a criminal defendant must overcome this presumption.[27] And unless clearly erroneous,

---

[25] *Brown*, 287 Ga. App. at 861 (5) (finding no reversible error because even though child-molestation offense for which defendant was found guilty took place at times different from time alleged in the indictment, defendant was not deprived of presenting an alibi defense or otherwise deprived of a fair trial); *Norman*, 278 Ga. App. at 499 (4) (same).

[26] *Chapman v. State*, 273 Ga. 348, 349-50 (2) (541 SE2d 634) (2001); *see Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 S.Ct. 2052, 80 LE2d 674) (1984).

[27] *Chapman*, 273 Ga. at 350 (2).

16

we will uphold a trial court's factual determinations with respect to claims of ineffective assistance of counsel; however, a trial court's legal conclusions in this regard are reviewed *de novo*.[28]

(a) Sowell first contends that his trial counsel rendered ineffective assistance by failing to object to the State cross-examining him regarding his driver's license without admitting it into evidence and then referring to the cross-examination during its closing argument. We disagree.

As previously noted, Sowell testified in his own defense at trial. During its cross-examination of Sowell, the State attempted to explain why A. H. had not been able to identify Sowell in the courtroom during her testimony by questioning Sowell as to whether his appearance had changed since his arrest. Specifically, the State's prosecutor noted that Sowell was currently clean-shaven and wore glasses but that he had a beard and did not wear glasses at the time of the incident that resulted in his arrest. Following up on this line of questioning, the State's prosecutor asked Sowell to produce his driver's license, which Sowell did. The prosecutor then noted that the photograph on Sowell's license showed that he had a beard and that the license did not indicate that Sowell was required to wear glasses to drive. The driver's license

_____

[28] *Henderson v. State*, 303 Ga. App. 898, 898 (1) (695 SE2d 334) (2010).

17

was never admitted into evidence or shown to the jury, and Sowell's trial counsel lodged no objection. Then, during closing argument, the State's prosecutor noted again that Sowell's driver's license showed that his current appearance differed significantly from the last time A. H. had seen him.

Sowell now contends that his trial counsel performed deficiently, arguing that he should have either objected to the State's cross-examination regarding his driver's license or introduced the license into evidence. But this Court has long held that decisions regarding when and how to raise objections are "generally matters of trial strategy, and such strategic decisions do not constitute deficient performance unless they are so patently unreasonable that no competent attorney would have chosen them."[29] Here, during the hearing on Sowell's motion for new trial, Sowell's trial counsel testified that he did not object to the State's references to Sowell's driver's license because he did not want the jury to think the defense had anything to hide. And minimizing objections in an effort to show the jury that the defense had nothing

---

[29] *Nesbitt v. State*, 296 Ga. App. 139, 142 (3) (d) (673 SE2d 652) (2009) (punctuation omitted); *accord Crawford v. State*, 294 Ga. App. 711, 712-13 (1) (b) (670 SE2d 185) (2008).

18

to hide was sound strategy.[30] Accordingly, the trial court did not err in denying this specific claim of ineffective assistance of counsel.

(b) Sowell further contends that his trial counsel rendered ineffective assistance by failing to object when the State's prosecutor referred to facts not in evidence during closing argument. Again, we disagree.

As previously mentioned, one of the defense witnesses was A. H.'s great-grandmother, who testified that A. H.'s mother, in commenting on the case, stated that "they're trying to say it was [A. H.'s father,]" and that A. H. replied, "I thought you told me it was Uncle Cody." Attempting to address this evidence during closing argument, the State's prosecutor argued, "Well, who are they? Well, it ain't the D.A." Sowell now argues that his trial counsel should have objected to this argument because failing to do so allowed the State to essentially testify that A. H.'s father was never suspected of being the person who actually sexually abused the child. However, during the motion-for-new-trial hearing, Sowell's trial counsel testified that his goal

---

[30] *See Hartsfield v. State*, ___ Ga. ___, Slip op. at 13-14 (3) (b) (Case No. S13A1608; decided March 28, 2014) (holding that defense counsel's failure to object to hearsay statements in an effort to show that defendant had nothing to hide was reasonable trial strategy); *Wright v. State*, 322 Ga. App. 622, 625 (2) (c) (745 SE2d 866) (2013) (holding that defense counsel's decision not to object to replaying of video of victim's interview because, in part, strategy was to portray defendant as having nothing to hide did not amount to ineffective assistance).

in calling the great-grandmother as a witness was to emphasize the second part of the aforementioned testimony, *i.e.*, A. H.'s response to her mother, which seemingly indicated that the child had been coached regarding whom to accuse. Given that context, Sowell's trial counsel further testified that he did not object to the prosecutor's comments on this evidence because he thought the prosecutor's attempt to refute it was unsuccessful. And viewed without the "distorting effects of hindsight, trial counsel's conduct was reasonable in this case."[31] Thus, the trial court did not err in denying Sowell's claim of ineffective assistance in this regard.

For all the foregoing reasons, we affirm Sowell's convictions.

*Judgment affirmed. Barnes, P. J., and Branch, J., concur.*

---

[31] *Cammer v. Walker*, 290 Ga. 251, 255 (1) (719 SE2d 437) (2011) (citation and punctuation omitted); *see Jackson v. State*, 271 Ga. App. 317, 320 (1) (b) (609 SE2d 643) (2004) (holding that trial counsel's failure to object to prosecutor's comments concerning facts not in evidence were presumed strategic in absence of evidence to the contrary).