[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15827
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cr-00055-JES-UAM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMES FRANKLIN BROOMFIELD, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 3, 2014)

Before HULL, JORDAN, and BLACK, Circuit Judges.

PER CURIAM:

After a jury trial, James Franklin Broomfield, Jr. appeals his conviction and 180-month sentence for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).  On appeal, Broomfield argues, inter alia, that the district court abused its discretion in determining that the video clip depicting him in possession of a firearm was properly authenticated.  He also contends that the district court erred in sentencing him under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1).  After review of the briefs and record, we affirm, but remand for the limited purpose of correcting a clerical error.

## I.  TRIAL EVIDENCE

A federal grand jury indicted Broomfield on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), punishable under 18 U.S.C. § 924(e) because Broomfield had three prior convictions for serious drug offenses.  Specifically, the indictment charged that Broomfield knowingly possessed in and affecting commerce, an AR-15 rifle and PMC .223 ammunition, on or about January 21, 2011.  Broomfield pleaded not guilty and went to trial. Below is the trial evidence relevant to the issues on appeal.

## A.    The YouTube Video

The government's evidence of Broomfield's possession of the AR-15 rifle and PMC .223 ammunition included a copy of a video of Broomfield discharging the weapon at a firearms store and shooting range called Fowler Firearms.

2

Prior to the trial, the government moved in limine for the district court to rule on the admissibility of this video. The government detailed the circumstantial evidence that it believed authenticated the video. The district court declined ruling on the motion, finding that "testimony from various witnesses will be necessary and the issue cannot be determined without a trial of the general issues."

At trial, Federal Bureau of Investigation special agent Ryan Davis testified that while investigating the defendant for suspected violations of federal firearms laws, he saw a YouTube video of Broomfield, whom Agent Davis recognized from a previous traffic stop. Agent Davis stated that he made an exact copy of the video, which the government presented as its Exhibit 1. When Agent Davis began testifying to the content of the video, Broomfield objected. After viewing the video outside the presence of the jury, the district court did not allow Agent Davis to testify to the content of the video because it was not properly authenticated. Agent Davis was permitted only to testify that he observed Broomfield in the video.

Following Agent Davis, Fowler Firearms's manager, Jon Dezendorf, testified that Broomfield was a Fowler Firearms member, that on January 21, 2011, Broomfield purchased two boxes of PMC .223 ammunition, and that he had not purchased that ammunition at any other time. Dezendorf stated that the only firearm Fowler Firearms rented to customers at the time that used PMC .223

ammunition was the AR-15 rifle.[1]  Dezendorf also testified that he saw Agent

Davis's copy of the YouTube video and that Dezendorf knew that the video was

filmed at Fowler Firearms's gun range.  The district court did not allow Dezendorf

to testify to the contents of the video beyond his identification in the video of

Fowler Firearms, a box of PMC .223 ammunition, a Fowler Firearms gun box, and

targets sold by Fowler Firearms.  The video was still not allowed into evidence.

Joshua Hackman, who had worked at Fowler Firearms for ten years, also

testified to establish the authenticity of the YouTube video.  Hackman testified that

he recognized Fowler Firearms as the location of the video from numerous

distinguishing features.  He also stated that the video showed one of Fowler

Firearms's rifle rental bags, and he identified the rifle in the video as an AR-15

rifle, specifically, a Bushmaster.  Additionally, Hackman testified that he could

discern the approximate date the video was taken.  Hackman explained that the

video showed side deflectors and lights on the gun range, which Fowler Firearms

had installed in late 2010 or early 2011.  Hackman also testified that Fowler

Firearms paints its floors and walls at the beginning of the season, and the freshly-

painted floor and walls seen in the video indicated that the footage was filmed

close to the start of 2011.  The district court, again, did not allow the video into

---

[1] Fowler Firearms did not have a receipt of the AR-15 rifle rental because on Fridays it allows men to rent firearms for free and does not document those rentals; January 21, 2011 was a Friday.

evidence because it did not think the government had adequately established its authenticity.

The government then called Larry Jais to establish the approximate date the video was filmed. Jais operated a maintenance business that provided repair and maintenance to Fowler Firearms. Jais testified that he installed the lighted baffles shown in the video, in late September or early October of 2010.

Following this testimony, outside the presence of the jury, the government sought to admit the video of Broomfield shooting the AR-15 rifle, contending that video was now sufficiently authenticated by the circumstantial evidence summarized above. The government, with further testimony of Agent Davis, sought to admit Google records to establish the date the video was uploaded; the district court stated it would consider the Google records only for the hearing to determine whether to admit the video, and ultimately did not admit the records. The district court echoed Broomfield's concern that the government had not presented evidence that the video had not been altered or manipulated.

After recessing to review relevant case law, the district court admitted the video into evidence, stating it was "satisfied, without considering the Google records, that the government has established circumstantially": (1) the date the video was taken; (2) that Broomfield appears in the video; and (3) that the video is authentic—"that is, that [the video] is what they claim it is, and that is a videotape

5

of the defendant in the possession of the firearm on or about January 21, 2011."

The government then published the copy of the YouTube video to the jury, over Broomfield's objection.[2]

The government recalled Agent Davis to the stand and he testified that the video showed Broomfield discharging the AR-15 rifle, with two boxes of PMC .233 ammunition nearby.

## B.    Interstate Commerce

The government supported the interstate commerce element of 18 U.S.C. § 922(g)(1) with the testimony of Agent Craig Kailimai, of the Bureau of Alcohol, Tobacco, Firearms and Explosives.  Kailimai testified that the AR-15 rifle was manufactured in Utah, and that, to his knowledge, Bushmaster does not manufacture AR-15 rifles in Florida.  He also testified that the PMC .223 ammunition was manufactured in South Korea, and that, to his knowledge, PMC .233 ammunition is not manufactured in Florida.

In moving for a judgment of acquittal and in objecting to the district court's jury instructions, Broomfield argued that the government needed to show his firearm possession had a "substantial effect" on interstate commerce.  Both times, the district court rejected Broomfield's arguments.

---

[2]While the district court overruled Broomfield's authentication objection to the admission of the video, it sustained Broomfield's objection to the transcription of the words spoken in the video, which the government had inserted below the image.

6

## II.  SENTENCING

### A.    The Presentence Investigation Report

After the jury found Broomfield guilty, his probation officer prepared a Presentence Investigation Report ("PSI").  The PSI recommended a base offense level of 24, pursuant to U.S.S.G. § 2K2.1, and an adjusted offense level of 33, pursuant to U.S.S.G. § 4B1.4(b)(3)(B), because Broomfield qualified as an armed career criminal due to his three prior Florida convictions for serious drug offenses. The PSI listed all of Broomfield's prior criminal convictions, which yielded a criminal history score of 9 and a criminal history category of IV.  Based on a total offense level of 33 and a criminal history category of IV, the PSI recommended an advisory guidelines range of 188 to 235 months.  The statutory minimum term of imprisonment under 18 U.S.C. § 924(e) is 15 years, and the statutory maximum term is life.

Broomfield filed written objections challenging his status as an armed career criminal under the ACCA and U.S.S.G. § 4B1.4.  Specifically, Broomfield objected: (1) to the PSI's reliance on arrest reports to describe the underlying facts of two of his three prior offenses; and (2) that, even if charging documents were submitted, the government would be unable to demonstrate that his prior offenses occurred on separate occasions because the dates of the offenses were not essential elements of the crimes charged.

**B.    Sentencing Hearing**

At sentencing, the parties agreed that the district court could not rely upon the PSI's narrative facts about the prior offenses that were drawn from arrest reports to determine whether those prior offenses were qualifying offenses under the ACCA. To carry its burden to prove the three prior offenses qualified, the government produced copies of the charging documents for each of Broomfield's three prior drug convictions.

The charging documents showed that Broomfield was charged with: (1) possession of cocaine with intent, in violation of Florida Statute § 893.13(1)(a), on or about February 21, 2006; (2) sale or delivery of cocaine within 1000 feet of a public housing facility and possession of cocaine, in violation of Florida Statute § 893.13(1)(f) and § 893.13(6)(a), respectively, on or about September 18, 2004; and (3) sale/delivery of a controlled substance within 1000 feet of a school and possession of cocaine, in violation of Florida Statute § 893.13(1)(c) and § 893.13(6)(a), respectively, on or about September 8, 2004.

Broomfield did not dispute the nature of the three prior offenses, that is, that they were "serious drug offenses," but rather argued that the charging documents did not show that the three offenses occurred on different occasions, as required by the ACCA. The district court disagreed and concluded that the dates in the charging documents established that Broomfield committed each of his three prior

8

offenses on different occasions.  The district court overruled Broomfield's objections to being sentenced under the ACCA and found that Broomfield's advisory guidelines range was 188 to 235 months.

Broomfield asked the district court for a small downward variance from the guidelines range to the statutory minimum of 180 months.  The district court granted Broomfield's request and imposed the statutory minimum of 180 months' imprisonment.

The district court's final judgment listed the date of his federal offense as January 11, 2011 instead of January 21, 2011.

## III.  DISCUSSION

### A.    Authentication of the Video Clip

The "admission of evidence is committed to the sound discretion of the trial court."  United States v. Cole, 755 F.2d 748, 766 (11th Cir. 1985).  Accordingly, we review the district court's decision to admit evidence for abuse of discretion. Id.  We will not overturn a district court's determination that a piece of evidence has been properly authenticated unless "there is no competent evidence in the record to support it."  United States v. Caldwell, 776 F.2d 989, 1001 (11th Cir. 1985) (internal quotation marks omitted).

Broomfield contends that the district court abused its discretion by admitting the YouTube video into evidence.  We disagree and explain why.

9

Before an item of evidence may be admitted, Federal Rule of Evidence 901(a) requires it to be authenticated with evidence "sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Proper authentication requires only that the proponent of the evidence make out a prima facie case that the proffered evidence is what it purports to be. United States v. Belfast, 611 F.3d 783, 819 (11th Cir. 2010).

Evidence may be authenticated by its "appearance, contents, substance, internal patterns, or other distinctive characteristics . . . taken together with all the circumstances." Fed. R. Evid. 901(b)(4). Authentication may be established "solely through the use of circumstantial evidence." United States v. Smith, 918 F.2d 1501, 1510 (11th Cir. 1990). Once such a showing has been made, the court may admit the evidence, and the ultimate question of its reliability is reserved for the fact finder. Belfast, 611 F.3d at 819.

Thus, the question before us is whether there is any competent evidence to support the district court's determination that the government made out a prima facie case that this YouTube video is what the government purports it to be—a video of Broomfield in possession of a firearm. We conclude that there is ample evidence in the record that the video depicted Broomfield in possession of a firearm. The government's evidence identified the individual in the video as Broomfield, established where and approximately when the video was recorded,

10

and then identified the specific rifle and ammunition depicted in the video. Because authentication may occur solely through the use of circumstantial evidence, the government met its burden of presenting a prima facie case that the video depicted Broomfield in possession of a firearm.

Relying on United States v. Biggins, 551 F.2d 64 (5th Cir. 1977),[3] Broomfield argues that the video was not adequately authenticated because there was no testimony establishing that the recording equipment was reliable or that the video was not altered or staged. Broomfield's reliance on Biggins is misplaced. The Court in Biggins stated that to authenticate a sound recording made by investigators during the government's electronic surveillance, the prosecution had to establish: the competence of the government's recording operator; "the fidelity of the recording equipment"; "the absence of material deletions, additions, or alterations" in the recording; and "the identification of the relevant speakers." Biggins, 551 F.2d at 66. The Court applied these factors to a recording that the government created, and this was critical to the Court's analysis. Id. The Court stated that this "burden properly falls to the government because it has access to such information in a way the criminal defendant does not." Id.

Here, where the government did not make the video, but merely found it on YouTube, that particular reasoning does not apply. Indeed, if the Biggins factors

---

[3]This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

were to apply under these circumstances, as Broomfield suggests it should, the prosecution could seldom, if ever, authenticate a video that it did not create. Because the government did not record the video in question, the Biggins factors are inapposite.

In any event, as the Biggins Court recognized, even if one or more of the factors are not satisfied, we are "extremely reluctant to disturb" the district court's decision to admit the recording if other trial evidence establishes it is authentic. See id. at 67. Given the other substantial evidence establishing where and when the video was made and who and what appeared in the video, the district court's decision to admit the video clip was not an abuse of discretion even if the government did not satisfy all of the Biggins factors.

Accordingly, there is competent evidence in the record to support the district court's determination that the video was properly authenticated.

B.    **The Armed Career Criminal Act**

On appeal, Broomfield does not challenge the existence of his three prior convictions or argue that they are not "serious drug offenses" within the meaning of the ACCA.

Rather, Broomfield argues that he was improperly sentenced under the ACCA because the district court erred in determining that his prior convictions occurred on separate occasions. Broomfield posits that this is so because the

12

district court was not entitled to rely on non-elemental facts contained in the charging documents. Broomfield acknowledges that this argument is contrary to this Court's precedent, but argues that the Supreme Court's decision in Descamps v. United States, 570 U.S. ___, 133 S. Ct. 2276 (2013), abrogates our relevant precedent.

Whether a defendant's prior convictions are separate offenses under the ACCA is a legal determination that we review de novo. United States v. Weeks, 711 F.3d 1255, 1261 (11th Cir. 2013).

A defendant is subject to the ACCA, and to the offense-level increase in U.S.S.G. § 4B1.4, if he has three qualifying prior convictions for crimes "committed on occasions different from one another." 18 U.S.C. § 924(e)(1); U.S.S.G. § 4B1.4(a). To be considered different occasions, the crimes must be "temporally distinct" and arise from "separate and distinct criminal episode[s]." United States v. Sneed, 600 F.3d 1326, 1329 (11th Cir. 2010) (internal quotation marks omitted).

To prove that the prior offenses occurred on different occasions, the government must use only those documents approved in Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254 (2005), such as the charging documents, plea agreements and colloquies, jury instructions, and other comparable judicial records. Sneed, 600 F.3d at 1332-33; see also Shepard, 544 U.S. at 16, 26, 125 S.

13

Ct. at 1257, 1263.  The district court, in turn, may use the Shepard-approved documents to "determine both the existence of prior convictions and the factual nature of those convictions, including whether they were committed on different occasions."  Weeks, 711 F.3d at 1259.

A district court may rely upon the dates listed in charging documents, even if the dates are not elements of the crimes charged.  See id. at 1260-61. "Distinctions in time and place are usually sufficient to separate criminal episodes from one another even when the gaps are small, and two offenses are considered distinct if some temporal break occurs between them."  Id. at 1261 (internal quotation marks omitted).  Thus, where the charging documents illustrate some temporal break between the ACCA qualifying offenses, a district court correctly relies upon such documents to classify a defendant as an armed career criminal, even if the dates were non-elemental facts.

Here, the charging documents submitted by the government and properly relied upon by the district court at sentencing establish that Broomfield committed each of his three prior drug offenses on different occasions.  Specifically, the charging documents for each ACCA-qualifying offense revealed that the offenses occurred on: February 21, 2006; September 18, 2004; and September 8, 2004. Because the offenses occurred on separate dates, they were "temporally distinct"

14

from one another and the district court properly concluded that the crimes occurred on different occasions.

Broomfield's argument that Descamps abrogated our precedent is unavailing. Descamps dealt only with whether a sentencing court may use the modified categorical approach to ascertain whether a conviction is a qualifying offense under the ACCA when the statute under which the defendant was convicted has a single, indivisible set of elements. Descamps, 570 U.S. at ___, 133 S. Ct. at 2283-93. Because Descamps does not address the separate-occasions inquiry, it does not overrule our precedent on that subject. See Sneed, 600 F.3d at 1332 (stating that, under the prior panel precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc").

Accordingly, the district court did not err in sentencing Broomfield under the ACCA.

## C.    Arguments Foreclosed by Binding Precedent

For the first time on appeal, Broomfield also argues that: (1) the felon in possession statute, 18 U.S.C. § 922(g), is unconstitutional; and (2) his sentence is unconstitutional because the district court used facts not proven to the jury beyond a reasonable doubt—his prior criminal convictions—to increase the statutory

15

minimum punishment.  Broomfield acknowledges, and we agree, that both of these points are foreclosed by binding precedent.

First, this Court has upheld the constitutionality of the felon in possession statute, 18 U.S.C. § 922(g).  United States v. Nichols, 124 F.3d 1265, 1266 (11th Cir. 1997).  In rejecting a constitutional challenge to the statute, this court stated, "the Supreme Court has held that the phrase 'in or affecting commerce' indicates a Congressional intent to assert its full Commerce Clause power."  Id. at 1266.  This court has also "repeatedly held that Section 922(g)(1) is not a facially unconstitutional exercise of Congress's power under the Commerce Clause because it contains an express jurisdictional requirement."  United States v. Jordan, 635 F.3d 1181, 1189 (11th Cir. 2011). [4]  The jurisdictional element of the felon in possession statute is constitutionally applied "when the firearm in question has a 'minimal nexus' to interstate commerce."  Id.  This minimal nexus is satisfied if the government demonstrates that the firearm has traveled in interstate commerce, as the government did here.

Second, under the Supreme Court's precedent, a prior conviction may be used to enhance a defendant's sentence, even if the conviction was not charged in the indictment and proven beyond a reasonable doubt.  See Almendarez-Torres v.

---

[4]Accordingly, Broomfield's reliance on United States v. Lopez, 514 U.S. 549, 115 S. Ct. 1624 (1995), is misplaced.  See United States v. McAllister, 77 F.3d 387, 389-90 (11th Cir. 1996) (stating that the presence of the jurisdictional element precludes the argument that 18 U.S.C. § 922(g) is unconstitutional under Lopez).

16

United States, 523 U.S. 224, 239-47, 118 S. Ct. 1219, 1229-33 (1998) (allowing the district court to consider prior convictions at sentencing); Apprendi v. New Jersey, 530 U.S. 466, 489-90, 120 S. Ct. 2348, 2362 (2000) (expressly declining to overrule Almendarez-Torres); Alleyne v. United States, ___ U.S. ___, 133 S. Ct. 2151, 2160 n.1 (2013) (declining to reconsider Almendarez-Torres).  We are bound by this precedent until the Supreme Court overrules it.  See United States v. King, 751 F.3d 1268, 1280 (11th Cir. 2014).

Accordingly, Broomfield cannot show error, much less plain error, with respect to these two claims.  See United States v. Wright, 607 F.3d 708, 715 (11th Cir. 2010) (explaining that we review only for plain error an issue raised for the first time on appeal).

## D.    Correction of a Clerical Error

If the final judgment contains a clerical error, we have the authority to remand the case to the district court with instructions to correct the error.  See United States v. Anderton, 136 F.3d 747, 751 (11th Cir. 1998).  However, remand for correction of the judgment is appropriate only where the mistake is a clerical error, and correction would not prejudice the defendant in any reversible way. United States v. Diaz, 190 F.3d 1247, 1252 (11th Cir. 1999).

Both Broomfield's indictment and the evidence presented at his trial indicated that the offense occurred on or about January 21, 2011.  However, the

17

final judgment incorrectly states that the offense concluded on January 11, 2011. The parties agree that this discrepancy in dates is the result of a clerical error and that the judgment should have listed the date the offense concluded as January 21, 2011.  Correcting the judgment to reflect the correct date would not prejudice Broomfield in any way.  Accordingly, we remand for the limited purpose of correcting the clerical error.

## I.  CONCLUSION

For the foregoing reasons, we affirm, but remand for the limited purpose of correcting the clerical error.

**AFFIRMED and REMANDED.**