**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**RICKMAN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 21, 2019**

# In the Court of Appeals of Georgia

A18A1803. BEAMON v. THE STATE.                                    MA-056C

MARKLE, Judge.

Following a jury trial, Carl Ricardo Beamon was convicted of armed robbery (OCGA § 16-8-41), aggravated assault (OCGA § 16-5-21), and possession of a firearm during the commission of a felony (OCGA § 16-11-106).[1] Beamon appeals his convictions and the denial of his motion for new trial, as amended, contending that (i) his trial counsel rendered ineffective assistance, (ii) the trial court committed error in admitting certain evidence over objection, and (iii) the evidence was insufficient to support the evidence. Finding no error, we affirm.

---

[1] Beamon was also convicted of one count of escaping, but does not appeal that conviction.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence shows that on the early morning of December 11, 2013, Beamon and two co-defendants entered a grocery store where the clerk and the cash register were enclosed in glass behind a locked door. Beamon, who was not wearing a mask, kicked down the door to the enclosure and stole cash and lottery tickets while holding a gun to the clerk.

The armed robbery was recorded on the store's surveillance cameras. The store manager pulled the footage from the cameras and gave the video to the police. The video was admitted into evidence at trial, over objection, and was played for the jury. Items of clothing Beamon was seen wearing in the surveillance video, as well as a firearm similar to the one used during the robbery, were later recovered during a search of his residence, and were also admitted into evidence at trial.

During the State's case-in-chief, the store clerk was called as a witness. In the presence of the jury, the clerk was unable to take the oath because of difficulties understanding English. The trial court held a hearing outside the presence of the jury, and ultimately determined the clerk was incompetent to testify without an interpreter. As the State did not secure an interpreter, the jury heard no testimony from the victim.

At the conclusion of the trial, the jury convicted Beamon on all counts. Beamon filed a motion for new trial, as amended, contending that he received ineffective assistance of counsel and that the evidence was insufficient to support his conviction. The trial court denied the motion. This appeal follows.[2]

1. Beamon first contends his trial counsel was ineffective for failing to object to certain remarks made by the prosecutor in closing argument. We disagree.

To prevail on a claim for ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient, and that the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U. S. 668, 687-695 (104 SCt 2052, 80 LE2d 674) (1984).

> To meet the first prong of the required test, the defendant must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. To meet the second prong of the test, the

[2]In A17A0719, we dismissed Beamon's direct appeal because his motion for new trial was untimely filed pursuant to OCGA § 5-5-40 (a); see *Wicks v. State*, 277 Ga. 121 (587 SE2d 21) (2003). The trial court granted Beamon's subsequent motion for out-of-time appeal, and Beamon filed a second motion for new trial. Beamon filed a timely notice of appeal of the trial court's denial of the second motion for new trial, and his appeal is now properly before us. See *Maxwell v. State*, 262 Ga. 541, 542-543 (3) (422 SE2d 543) (1992).

3

defendant must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of [his] trial would have been different.

(Citations and punctuation omitted.) *Peterson v. State*, 282 Ga. 286, 290 (4) (647 SE2d 592) (2007). "If an appellant fails to meet his . . . burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." (Citation omitted.) *Wright v. State*, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012). In reviewing the trial court's ruling on a claim of ineffective assistance of counsel, we give "deference to the lower court's factual findings, which are upheld unless clearly erroneous; the lower court's legal conclusions are reviewed de novo." (Citation omitted.) *Boatright v. State*, 308 Ga. App. 266, 267 (1) (707 SE2d 158) (2011). Bearing these principles in mind, we address Beamon's claims of ineffective assistance of counsel.

(a) Beamon argues that his trial counsel was ineffective for failing to object to the State's closing arguments, during which the prosecutor referenced a photographic lineup that was not admitted into evidence.

The State first referenced the photographic lineup in its opening statement; however, the lineup was not tendered into evidence since the clerk did not testify. During closing argument, the State argued:

[Defense counsel] went back to my opening and said that during my opening I showed you a picture and said there was a lineup shown to a witness, that witness is going to come in here and identify somebody. And I did. I showed you a picture of the lineup, a picture of this Defendant, signed by . . . [the clerk]. You did not see that in the trial. Now, I would love to argue it, but I have to tell you the rule is you cannot consider that in your deliberations. What you can consider is the argument they made that it doesn't exist and that it's not there. Now, ask yourself, we didn't hear it from [the clerk], but what did you see in the courtroom? [The clerk] is a foreign national. English is not his first language. I don't even know what his legal citizenship status is. That's probably one of the reasons he's afraid to talk and come to court. But he comes in here, tries to take the oath, doesn't understand it, and when you can't take the oath, you can't testify. When you can't testify, nothing you would say can be considered. So I wish we could have had that evidence for you. It's not as though the State hid something. We brought the man in here. He just, for some reason today, whether he was telling the truth that he couldn't speak or not, because of some cultural thing or worried about being here, worried about being -- testifying in front of, you know, family members of these Defendants, worrying about going to work back in that store, or these other individuals who are related to them and can come back into that store where you are, already in a culture where you probably don't trust the police as much -- who knows why.

Trial counsel did not interpose an objection to this language, nor did he seek a mistrial.

"What the law forbids is the introduction into a case by way of argument of facts which are not in the record and are calculated to prejudice a party and render the

5

trial unfair." *Stancil v. State*, 158 Ga. App. 147, 148 (2) (279 S.E.2d 457) (1981). We find no such prejudice or unfairness in the State's remarks. Furthermore, Beamon has failed to establish that he would have been entitled to a curative instruction or mistrial under the circumstances. See *Boatright*, 308 Ga. App. at 269 (1) (a). The State's remarks were responsive to Beamon's closing argument, during which trial counsel opened the door by arguing that the absence of the lineup, as well as the store clerk's testimony, were favorable to Beamon's defense. Notably, in response, the State emphasized to the jury that they could not consider the lineup in their deliberations. The record thus shows an objection for curative instruction or for mistrial would have been baseless. We therefore find that trial counsel's performance was not deficient in this regard. See id. (finding that defendant's counsel was not ineffective for failing to pursue a meritless motion for new trial).

(b) Beamon further contends that trial counsel's decision not to object to the State's remarks postulating on the clerk's unwillingness to testify constituted ineffective assistance of counsel because the remarks inserted racial biases and cultural fears into the proceedings, and were thus inflammatory and prejudicial. We do not agree.

"The permissible range of closing argument . . . is very wide. A prosecutor is granted wide latitude in the conduct of closing argument, the bounds of which are in the trial court's discretion." (Citation and punctuation omitted.) *Lamar v. State*, 297 Ga. 89, 93 (3) (772 SE2d 636) (2015). Furthermore, at the close of the trial, the court gave the standard pattern charge to the jurors, instructing them not to consider the remarks made by counsel in their deliberations. We presume the jury followed the instructions given by the trial court. *State v. Johnson*, 280 Ga. 511, 513 (630 S.E.2d 377) (2006). We find that trial counsel's failure to object to either statement in the State's closing argument does not constitute deficient performance such that would satisfy the first prong of *Strickland*. *Grissom v. State*, 296 Ga. 406, 412 (4) (768 SE2d 494) (2015). Accordingly, we find no error in the trial court's rejection of Beamon's claims of ineffective assistance of counsel.

2. Beamon next argues that the trial court erred in admitting the surveillance video because it was not properly authenticated. We discern no error.

"Generally, a videotape is admissible where the operator of the machine which produced it, or one who personally witnessed the events recorded testifies that the videotape accurately portrayed what the witness saw take place at the time the events

7

occurred." (Citation and punctuation omitted.) *Sowell v. State*, 327 Ga. App. 532, 536 (1) (759 SE2d 602) (2014).

Because the store clerk did not testify, there was no testimony at trial from a witness to the robbery. However, the store manager testified that his store had an eight channel DVR that recorded the outside and inside of the store, and that the cameras were working and functioning properly on the day of the robbery. The manager further testified that he personally pulled the surveillance video of the robbery from the system to give to the police, and identified the State's exhibit as the video recorded from the store on the day of the robbery.

OCGA § 24-9-901 (a) provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility shall be satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

Documentary evidence, such as a videotape, may be authenticated by "[a]ny method of authentication or identification provided by law." OCGA § 24-9-901 (b) (10). Pursuant to OCGA § 24-9-923 (b), a videotape is admissible "when necessitated by the unavailability of a witness who can provide personal authentication and when the

8

court determines, based on competent evidence presented to the court, that such items tend to show reliably the fact or facts for which the items are offered."

Here, in the absence of personal authentication, the store manager's testimony provided sufficient evidence of the video's reliability. See *Dawson v. State*, 283 Ga. 315, 318 (3) (658 SE2d 755) (2008) (affirming trial court's ruling that security video was admissible, despite the lack of personal authentication, where security director testified the cameras operated properly, were capable of reliably recording the scene, and recorded the events contemporaneously); see also *Tolver v. State*, 269 Ga. 530, 532 (3) (500 SE2d 563) (1998) (affirming trial court's ruling that surveillance tape that had been spliced and was identified only by its brand name label was admissible where the court heard testimony from the store supervisor regarding the store's surveillance camera procedures, the GBI agent who found the tape, the forensic photographer who repaired the tape, and the investigator who copied the tape for

admission at trial).[3] Accordingly, the trial court did not err in overruling Beamon's objection to the authenticity of the surveillance video.

3. Beamon next contends that the evidence was insufficient to support his conviction because there was no eyewitness or victim testimony, nor any forensic evidence linking him to the robbery. We are not persuaded.

On appeal from a jury verdict, a defendant no longer enjoys the presumption of innocence. *Sowell*, 327 Ga. App. at 534. In considering the sufficiency of the evidence, "we do not weigh the evidence or determine witness credibility, but only

_____

[3]Since OCGA § 24-9-901 largely mirrors Federal Rule of Evidence 901, we look to federal case law and find further support for our holding here. See *State v. Almanza*, 304 Ga. 553, 556 (2) (820 SE2d 1) (2018). Under Federal Rule of Evidence 901, "authentication itself is merely the process of presenting sufficient evidence to make out a *prima facie* case that the proffered evidence is what it purports to be." (Citation and punctuation omitted.) *United States v. Belfast*, 611 F3d 783, 819, (VI) (C) (11th Cir. 2010). And "[a]uthentication may be established solely through the use of circumstantial evidence." (Citation and punctuation omitted.) *United States v. Broomfield*, 591 F. Appx. 847, 851 (III) (A) (11th Cir. 2014). Thus, in *Broomfield*, the court found a YouTube video, downloaded by an FBI agent and offered into evidence by the government, was properly authenticated under Federal Rule of Evidence 901 (b) (4) where the "evidence identified the individual in the video as Broomfield, established where and approximately when the video was recorded, and then identified the specific rifle and ammunition depicted in the video." Id. Here, where the store manager attested to the performance of the surveillance system and identified the videotape, we find the guarantees of authenticity to be more than sufficient.

determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt." Id.

Under OCGA 16-8-41 (a), "[a] person commits the offense of armed robbery when, with intent to commit theft, he . . . takes property of another from the person or the immediate presence of another by use of an offensive weapon."Pursuant to OCGA § 16-5-21 (a) (1-2), "[a] person commits the offense of aggravated assault when he . . . assaults . . . [w]ith intent to . . . rob . . . [or assaults] [w]ith a deadly weapon . . . which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-11-106 (b) (1) and (3) provide that "[a]ny person who shall have on or within arm's reach of his or her person a firearm . . . during the commission of, or the attempt to commit . . . [a]ny crime against or involving the person of another . . . [or] [a] theft from a building . . . and which crime is a felony, commits a felony."

As addressed in Division 2, supra, the armed robbery was recorded on the store's surveillance cameras, and the video was properly admitted into evidence. During the robbery, Beamon did not wear a mask or otherwise conceal his facial features. The video shows Beamon burst into the store's enclosure and hold a gun on the clerk while he stole cash and lottery tickets. Items of clothing and a weapon

11

similar to those seen on the video were recovered at his residence and admitted into evidence. This evidence was sufficient to support Beamon's conviction on the three offenses.

4. Finally, Beamon contends that the trial court erred in admitting nine financial transaction cards that were recovered at his residence over an objection to relevancy.

In light of the overwhelming evidence of guilt, as we addressed in Division 3, supra, we find it highly improbable that the admission of the financial transaction cards contributed to the verdict. See *Belcher v. State*, 344 Ga. App. 729, 743 (2) (c) (812 SE2d 51) (2018). As such, the error, if any, was harmless.

For all these reasons, we affirm Beamon's convictions.

*Judgment affirmed. McFadden, P. J., and Rickman, J., concur.*